STATE BANK OF DARBY, RESPONDENT, *v.* PEW ET AL.,
APPELLANTS.

(No. 4,259.)

(Submitted January 8, 1921. Decided February 10, 1921.)

[195 Pac. 852.]

*Building Contracts — Breach—Principal and Surety—Warranty—Measure of Damages—Evidence—Directed Verdicts.* ·

Building Contracts—Construction—Bonds—Principal and Surety.
  1. Where a contractor had obligated himself to construct a watertight basement in a building he had undertaken to erect for plaintiff by a bond separate and distinct from and without reference to the building contract or the plans and specifications furnished by plaintiff's architect, the bond being given about a month after execution of the building contract and a week later than the bond accompanying the latter contract, he was in no position, in an action on such special bond, to defend on the ground that its provisions should be construed with reference to the building contract, and that having followed the plans and specifications, he was relieved from liability thereunder. ' ,

Same—Plans and Specifications—Warranty—Special Contract—Liability for Breach.
  2. Where a contractor adopts specifications for the construction of a building as sufficient, makes them his own, and gives a warranty of the sufficiency of the work when completed, he is liable for defects in the work.

Same—Construction—Reference to Stipulation in Another Contract.
  3. A contract will not be held to incorporate stipulations embodied in another contract save in so far as the same are specifically set forth or identified by reference.

Same—Duty of Courts.
  4. Courts may interpret and enforce, but not create, contractual liabilities.

Same—Breach—Measure of Damages.
  5. The measure of damages in an action for breach of a building contract in a certain particular is the reasonable amount necessary to enable plaintiff to remedy the defect, not to exceed the amount alleged by him to have been expended for that purpose.

Directed Verdict—Proper Refusal.
  6. A directed verdict, in an action on a bond given in connection with a building contract, was properly refused where the evidence showed its execution, failure ·of performance of its guaranty, and resultant damage.

Same—Breach—Evidence—Admissibility—Measure of Damages.
  7. Evidence in the form of a draft payable to a contractor who at the instance of the owner of the building had remedied the defect in its construction, upon failure of the builder to do so, and testimony relative to what he received for doing the work, were admissible on the measure of damages sustained.

---

5. Measure of damages under building contract for defective work, see note in Ann. Cas. 1913B, 781.

*Appeals from District Court, Ravalli County; Theo. Lentz, Judge.*

ACTION by the State Bank of Darby against George H. Pew and another. From judgment for plaintiff, and order denying their motion for new trial, defendants appeal. Affirmed.

Cause submitted on briefs of Counsel.

*Messrs. Hall & Pope,* for Appellants.

It seems to be the settled rule, as stated in 9 Corpus Juris, 36, that, "where a bond and another contract or instrument relate to and form one and the same transaction, or the bond refers to such other instrument or is conditioned for the performance of specific agreements set forth therein, such instrument with all its stipulations, limitations or restrictions becomes a part of the bond, and the two should be read together and construed as a whole." This court followed and enforced the same rule in *Watson* v. *O'Neill,* 14 Mont. 197, 35 Pac. 1064, in which it was held that when a bond was given in connection with a building contract, the instruments should be construed together to explain each other under what is now section 7877 of the Revised Codes.

In the case at bar the plaintiff sues upon the bond set forth in the complaint. But since that bond referred to the building contract, and purported to have been given to secure the performance of that contract, the bond and the contract really constituted one transaction and one contract. In the contract, Pew agreed to construct the basement in accordance with the plans and specifications. Examination of the specifications shows that they are detailed, exact and specific. Then in the bond it is agreed, or guaranteed, that the basement shall be and remain water-tight.

As stated in 9 Corpus Juris, 746, when the contractor "agrees to build according to certain specifications and guarantees the sufficiency of the work he is not required to do more than the specifications call for." The principle underlying this rule

is that since the contractor, because of defects in the specifications furnished by the builder, is bound to two utterly inconsistent and irreconcilable obligations, so that if he performs one, he fails in the other, justice demands that if he has satisfied his obligation to build according to specifications, his whole obligation has been performed, whether the work satisfies the guarantee or not. (*Bush* v. *Jones,* 144 Fed. 942, 6 L. R. A. (n. s.) 774, 75 C. C. A. 582; *Filbert* v. *Philadelphia,* 181 Pa. 530, 37 Atl. 545; *MacKnight Flintic Stone Co.* v. *New York,* 160 N. Y. 72, 54 N. E. 661; *Penn Bridge Co.* v. *New Orleans,* 222 Fed. 737, 742, 138 C. C. A. 191; *Northern Pacific Ry. Co.* v. *Goss,* 203 Fed. 904, 910, 122 C. C. A. 198.)

*Messrs. Wagner & Taylor,* for Respondent.

Citing: *Bryson* v. *McCone,* 121 Cal. 153, 53 Pac. 637; *Blyth-Fargo Co.* v. *Free,* 46 Utah, 233, 148 Pac. 427; *Frank* v. *Butte & B. Min. & L. Co.,* 48 Mont. 83, 135 Pac. 904; *Meredith* v. *Roman,* 49 Mont. 204, 141 Pac. 643; *Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action brought by respondent against appellants to recover damages upon a bond executed by the appellants George H. Pew, as principal, and Fidelity & Deposit Company of Maryland, as surety, it being alleged that Pew entered into an agreement to build for respondent a water-tight basement or cellar under a certain bank building by him to be constructed, as contractor and builder, at the town of Darby, Ravalli county, Montana. The bond is in words and figures as follows:

"Fidelity & Deposit Company of Maryland,
"Home Office: Baltimore, Maryland.
"Bond.

"Know all men by these presents, that we, George H. Pew, of Missoula, Montana, as principal, and Fidelity & Deposit Company of Maryland, as surety, are held and firmly bound

unto the State Bank of Darby, Darby, Montana, in the full and just sum of one thousand dollars ($1,000.00) for the payment of which sum we bind ourselves, our heirs, executors and administrators, successors and assigns, firmly by these presents.

"Signed, sealed and dated this 20th day of July, 1914.

"The condition of this obligation is such, that, whereas, the above-bounden principal did on the 24th day of June, 1914, enter into a contract with the said State Bank of Darby for the construction of a certain bank building on lot 1, block 7, in the town of Darby, Montana, and did guarantee therein that the basement or cellar of said building should be and remain water-tight for the period of one year from the date thereof;

"Now, therefore, if the basement or cellar of said bank building shall be and remain water-tight (as applied to the commonly accepted meaning of the word water-tight as applied to the cellars of buildings) for the period of one year from the date hereof, then this obligation to be null and void; otherwise to remain in full force and effect.

"It is understood and agreed between all the parties to this bond and the condition upon which the surety executes the bond, that in event of a claim by the said bank under this bond the surety shall only be liable for actual and material damage to said bank or said building by the failure of the cellar or basement to be water-tight as aforesaid.

"[Signed]    GEO. G. PEW,
"Principal.
"FIDELITY & DEPOSIT COMPANY OF MARYLAND,
"By W. L. BERRY,
"Attorney in Fact.
"[Seal]                    Attest: W. S. McCREA,
"General Agent."

By "rider" for a valuable consideration it was extended by the surety, as to term, to November 1, 1915.

It is alleged by respondent that "Owing to the negligent and fraudulent construction of such basement by the appellant

Pew, it was not water-tight, and by reason thereof respondent was compelled to expend $875 to have the same repaired and made water-tight, and lost $117.75 in addition thereto on account of loss of tenants." The appellant Pew, in his separate answer, admits the execution of the bond sued upon, but denies that it was executed to secure any agreement or guaranty that the basement would remain water-tight. He admits that he constructed said basement, and alleges that in the construction thereof he fully and completely complied with all of the terms and specifications set out in his building contract. For a further defense he alleges that by the terms of his contract with the respondent he was required to perform the work according to certain specifications, and in the manner designated by respondent's architect, and to furnish surety bond for the performance of such building contract; that he furnished the required bond ($3,000), and in every particular complied with his building contract and with the specifications therein provided, and that his completed work was accepted and the contract price paid; that he was required to follow the specifications without departure therefrom, and was not permitted to do the work in any other manner than that provided in the contract, and was absolutely precluded by the respondent from doing so. For a second separate defense, appellant Pew alleged that the bond set out in plaintiff's complaint was without any consideration; and for a third defense that as soon as the leakage had developed in said basement he offered to stop and repair the same, but that respondent failed and refused to allow him to do so.

The separate answer of the Fidelity & Deposit Company admits that appellant Pew entered into a contract with the plaintiff to construct the building; that Pew constructed the basement, and that it signed the bond set out in the complaint, and denied all other allegations of the complaint. It also relies and pleads the same three separate defenses made by appellant Pew. The only new matter contained in the replies filed by the respondent is that the specifications, which were a

part of the contract, contained the following condition: "The contractor [being the said defendant George H. Pew] shall, upon receiving the final payment for this work, deliver to the owner [being the plaintiff herein] a written and signed guaranty that the foundation shall be water-tight for a period of one year from the date of final acceptance and shall furnish a surety bond for $1,000 to accompany the guaranty if required."

The case was tried before a jury, and a general verdict rendered in favor of respondent for the sum of $875. The appeal is taken from the judgment and order made by the trial court denying appellants' motion for a new trial.

The pivotal and only material question involved in this case [1] is embraced in the first four assignments of error, which question is: Whether appellants are relieved from responsibility to answer in damages on the bond made the basis of this action because of alleged compliance with the plans and specifications furnished by the architect.

The building contract bears date June 24, 1914, and the required bond for the performance thereof ($3,000) was furnished by the appellants dated July 13, 1914, wherein exception of responsibility is made of requirement "in the contract or specifications respecting guaranties of efficiency or wearing qualities or for maintenance or repairs, nor does it obligate the surety to furnish any other bond covering such provisions of the contract or specifications." In the specifications made a part of the building contract by reference, the bond made the basis of this suit is provided for in the following language: "Guaranty: The contractor shall, upon receiving the final payment for this work, deliver to the owner a written and signed guaranty that the foundation shall be water-tight for a period of one year from the date of final acceptance and furnish a surety bond for $1,000 to accompany the guaranty, if required." In the building contract it is provided that The "contractor [Pew] will provide all the materials and perform all the work * * * with the following changes—lay 6" salt glazed cellar pipe 350 feet from rear of building and

around basement walls laid below basement floor on a proper grade to drain, as shown in the drawings and described in the specifications prepared by Ole Blakke, Missoula, Mont., architects, which specifications are identified by the signatures of the parties hereto and become hereby a part of this contract." The specifications were not, in fact, signed by the parties, but it is admitted that such specifications were the very ones referred to in the building contract, so that there is no question but what they formed a part thereof. Moreover, after completion of the work the appellant Pew executed and delivered to respondent a receipt in words and figures as follows, to-wit:

"Darby, Montana, January 26, 1915.

"On my representation that all bills for material and labor entering into the construction of the bank building which I contracted to build for the State Bank of Darby, Darby, Montana, are paid, said bank has this day paid me the final payment of $1,500 in full for the construction of said building.

"I hereby agree to hold said bank harmless from any costs of any action brought to recover for labor or material that has entered into the building, or the foreclosure of liens on same.

"Furthermore, this final payment is not construed by me to invalidate a certain bond given by me and executed by the Fidelity Deposit Company of Maryland, of Baltimore, on my behalf, guaranteeing to said State Bank of Darby that the basement of said bank building shall be and remain water-tight until the expiration of the time mentioned in said bond. namely, November 1, 1915.

"GEO. H. PEW.   [Seal.]

"Signed in presence of SEVER THOMPSON."

It appears the basement was completed in the fall of 1914, and was dry until about June 1, 1915; that it was not water-tight, and that before the expiration of the guaranty period of one year, *i. e.*, in the month of June, 1915, water came in through the floor, the walls and sides, and water had to be pumped out every day or so; it would stand two or three

inches deep on the floor of the basement, and that condition continued until the first part of September, 1915, and then it filled with water entirely.

The appellant Pew, although admitting that the basement was not water-tight, demanded additional pay to place the basement in condition, notwithstanding the provisions of the bond sued upon and the receipt by him executed after completion of the work at the time final payment was made therefor, asserting that the bond was of no binding force. In consequence the respondent, in the spring of 1916, employed Olson & Johnson, of Missoula, Montana, to put the basement in condition, and paid the latter company for the performance of the work and labor the sum of $875.

Appellants contend that the bond made the basis of this action must be construed in connection with the building contract, and that there can be no liability so long as the plans and specifications furnished by respondent were followed. In support of their position they rely upon *Watson* v. *O'Neill,* 14 Mont. 197, 35 Pac. 1064, wherein it is held that a bond given in connection with a building contract and conditioned for the furnishing of all labor and material necessary to the completion of the building, as specified and shown on the plans furnished by the architect, being contemporaneous and parts of the same transaction, should be construed with the building contract so that each may explain the other under section 632 of the Code of Civil Procedure, Comp. Stats. 1887 (sec. 7877, Rev. Codes). This case is easily distinguishable from the one now before us. The former case was upon a bond given for the performance of a building contract, and reference was specifically made in the bond, not only to the building contract, but also to the specifications for the work. They were contemporaneous of execution, and parts of the same transaction, and were therefore properly construed together in order to explain each other (sec. 5031, Rev. Codes). The bond sued upon in that case specified upon its face: "The condition of the above obligation is such that should Frederick Eide begin and

complete the brickwork on John R. Watson's business block as follows: Frederick Eide to furnish all the material, lime, sand, brick and all labor necessary to the erection of John R. Watson's business block on Main Street, as specified and shown on plans as furnished by W. E. Norris, architect, then the obligation to be void" whereas, in the case before us, a separate bond obligation, made and delivered subsequent to the execution of the building contract and the $3,000 bond for its fulfillment, is involved. Moreover, in the present case, the bond is an independent and distinct contractual obligation, as hereafter explained, without reference to the building contract or the plans and specifications, and the only reference made therein to the building contract is: "That whereas the above-bounden principal did on the twenty-fourth day of June, 1914, enter into a contract with the said State Bank of Darby for the construction of a certain bank building * * * and did guarantee therein that the basement or cellar of said building should be and remain water-tight for the period of one year from the date thereof." The building contract, as noted, provides that "the contractor [Pew] shall and will provide all the materials and perform all the work" with basement changes "as shown on the drawings and described in the specifications." The specifications contemplate, if required, the execution of a separate and independent bond in the sum of $1,000 by the contractor (Pew) "upon receiving final payment" by way of "guaranty that the foundation shall be water-tight for a period of one year from the date of final acceptance." Such bond was required and furnished, dated July 20, 1914, and there was a valuable consideration therefor. The consideration consisted of the right of the respondent to exact it under the building contract and specifications agreed upon, and as a condition precedent to final payment on the building contract. Final payment to the contractor (Pew) was made January 26, 1915, but not until after he had executed and delivered his receipt "in full for the construction of said building," wherein it was recited: "Furthermore, this final receipt is not construed

by me to invalidate a certain bond given by me and executed by the Fidelity Deposit Company of Maryland, of Baltimore, on my behalf, guaranteeing to said State Bank of Darby that the basement of said bank building shall be and remain watertight until the expiration of the time mentioned in said bond, namely, November 1, 1915."

A good consideration is "any benefit conferred or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor." (Sec. 5001, Rev. Codes. See, also, *Emerson-Brantingham Implement Co.* v. *Anderson,* 58 Mont. 617, 194 Pac. 160; *White* v. *Hulls, ante,* p. 98, 195 Pac. 850.)

In reaching conclusion in this case, we quote with approval the language used in the text of 9 Corpus Juris, page 36, section 59, as follows: "If only specific parts of any instrument are referred to, only so much of such instrument is incorporated in the bond as it is evident the parties intended to embody or to rely on. But this rule does not apply where the bond does not refer to the other instrument or contract, and they have no necessary relation to, or dependence on, each other." The language of the bond in the present case is not susceptible of the construction usually placed on bonds given by a building contractor to secure a building contract cited by counsel for appellants. (*Bush* v. *Jones,* 144 Fed. 942, 6 L. R. A. (n. s.) 774, 75 C. C. A. 582; *Filbert* v. *Philadelphia,* 181 Pa. 530, 37 Atl. 545; *MacKnight Flintic Stone Co.* v. *New York,* 160 N. Y. 72, 54 N. E. 661; *Penn Bridge Co.* v. *New Orleans,* 222 Fed. 737, 138 C. C. A. 191; *Northern Pac. Ry. Co.* v. *Goss,* 203 Fed. 904, 122 C. C. A. 198.)

In the cases cited, the doctrine is laid down that the guaranty extends, not to the sufficiency to produce the desired result, but rather to a complete fulfillment of the plans and [2] specifications provided by the owner. However, in the

case under consideration, the contractor (Pew) adopted the specifications for the basement as sufficient, made them his own, and gave a warranty of the sufficiency of the work when completed. (See *Bryson* v. *McCone*, 121 Cal. 153, 53 Pac. 637.)

If, as was held in *Watson* v. *O'Neill, supra*, it is proper to take into consideration the situation of the parties at the time of the execution of the instrument, and we apply this rule, we are confronted with the fact that the respondent would not have entered into the contract with the appellant Pew for the construction of the bank building independent of the guaranty by separate bond that the basement under the building would be and remain water-tight. The bond herein involved was executed nearly a month after the building contract had been entered into, and one week later than the bond furnished by the contractor for the complete performance of the building contract. Furthermore, after the basement had been entirely completed, as will be noted, the bond was extended for an additional term. There is no reference, in the bond covering the water-tight construction of the basement, to the specifications, and the only connection with the building contract by way of recital therein is that it is executed pursuant to guaranty required in the building contract.

In *Blyth-Fargo Co.* v. *Free*, 46 Utah, 233, 148 Pac. 427, the court, in construing a bond given to secure a contract for the construction of a tunnel for drainage and other purposes, used the following language: "Although, generally speaking, both the contract and bond must be construed together, yet, when the bond restricts the right to look to certain portions of the contract only, then only those which are thus selected can be considered. * * * If, therefore, we have recourse to the terms of the bond given in this case, it is apparent just what part of the provisions of the contract were intended to be made a part of the bond. It is unreasonable therefore to contend that, although certain portions of the contract were eliminated from the bond, yet we must still consider the whole contract for the purpose of determining the scope of the obligations con-

tained in the bond. Appellant, like others competent to contract, had the right to enter into just such a contract as it saw fit, and to limit its obligations in any particular it deemed proper, and, if the company or contractor were dissatisfied with the limitations contained in the bond as executed, either, or both, could refuse to accept it.''

"It may be generally stated that a bond may incorporate, by reference expressly made thereto, other contracts, papers, or written instruments, or it may be conditioned for the performance of certain specific agreements set forth in such instruments, so as to embody the same therein as a part of the obligation thereof with all the stipulations, limitations, or restrictions mentioned in the referred to papers, in which case the bond and the papers referred to should be read together and construed as a whole, although, if only parts of another contract be referred to, only so much of said writing is incorporated as is evident the parties intended to embody or rely upon.'' (5 Cyc. 757; see, also, *Blyth-Fargo Co.* v. *Free, supra.*).

A contract will not be held to incorporate stipulations [3] embodied in another contract, save so far as the same are specifically set forth or identified by reference. (*Meredith* v. *Roman,* 49 Mont. 204, 141 Pac. 643.)

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'' (Sec. 5027, Rev. Codes.) "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.'' (Sec. 5028.) "The whole of a contract is to be taken together, * * * to give effect to every part, if reasonably practicable, each clause helping * * * the other.'' (Sec. 5030.) "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done, without violating the intention of the parties.'' (Sec. 5032.) "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.'' (Sec. 5036.) However broad

may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.'' (Sec. 5037.)

Applying these rules of construction to the bond made the basis of this action, it is found that the contractual obligations of the appellants are complete, definite, certain and unambiguous, and they must be held to a compliance with its terms.

''Whatever impulses may control individual action, courts must be governed by law. It is their province to interpret contracts which are open to interpretation, or they may enforce obligations, but it is beyond their power to make agreements for parties, or to alter or amend those which the parties themselves have made.'' (*Frank* v. *Butte & Boulder Min. & L. Co.*, 48 Mont. 83, 135 Pac. 904.) Courts may enforce, but [4] not create, contractual liabilities. (*Smith* v. *Bowman*, 32 Utah, 33, 9 L. R. A. (n. s.) 889, 88 Pac. 687.)

Even though it be considered that the appellant Pew entered into an unwise contract, or that it imposed a hard burden, in that he assumed and guaranteed that the basement would be water-tight upon specifications prepared by another, yet he had the specifications before him, adopted them as his own, and, since he made the bargain, he must be held to it. (*Emerson-Brantingham Implement Co.* v. *Anderson, supra,*) To so hold is but to compel the principal and surety to do that which they bound themselves to do.

Assignments of error 5-8, inclusive, relate to instructions [5] given and refused, and evidence admitted bearing upon the measure of damages. Instruction No. 4, given by the court, and of which complaint is made, correctly states the law applicable to this case, on the question of damages. That instruction reads as follows: ''You are instructed that if you find from a preponderance of the evidence that the plaintiff is entitled to recover damages from the defendants, the measure of damages is as follows: The reasonable amount you shall find from a preponderance of the evidence it was reasonably necessary for the plaintiff to expend to secure a water-tight base-

ment, but in no case shall the amount exceed the sum of $875."

Offered instruction D 7 was properly refused by the court. It [6] is made the basis of appellants' eighth assignment of error, and reads as follows: "In this case the jury are instructed to return a verdict in favor of the defendants." There was nothing to warrant the giving of any such instruction, as from the evidence it conclusively appears that the appellants executed the bond on which the action is based, that the conditions of the bond failed of performance within the period of the guaranty of the bond, and respondent suffered damage. By reason of the breach the respondent was entitled to at least nominal damages.

The sixth and seventh assignments of error relate to [7] evidence admitted over objection of appellants. They are as follows: "VI. The court erred in admitting in evidence, over defendants' objection, plaintiff's Exhibit 4, being a draft for $885.50, payable to the order of Olson & Johnson Company and drawn by Sever Thompson upon the Scandinavian American State Bank." "VII. The court erred in overruling defendants' objection to the following question put by plaintiff to the witness Olson: 'And what did you receive for constructing the basement?'"

The evidence was properly admitted as to the measure of damages sustained, but the question of the reasonableness and necessity of the amount expended for putting the basement in water-tight condition is quite another matter, not raised by these assignments of error, and is therefore not considered. Had error been predicated on the insufficiency of the evidence, a different conclusion might have been reached.

For the reasons stated, the judgment and order appealed from are affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Associate Justices Reynolds, Cooper and Holloway concur.