BREEN et al., Respondents, *v.* SECURITY BRIDGE CO., Appellant.

(No. 5,140.)

(Submitted April 6, 1923. Decided April 21, 1923.)

[215 Pac. 229.]

*Construction Contracts — Warranty of Structure — Interpretation.*

Contracts—Warranty of Material and Workmanship to Do Work Structure Intended for—Interpretation.
1.   In an action for breach of contract for the construction of a trestle designed to carry a flume across a mountain stream for the purpose of conveying water to plaintiff's lands for irrigation, under which contract defendant company guaranteed "the workmanship and material in this structure to do the work for which the structure is intended," the plans and specifications for which had been prepared by itself, *held* that the warranty was one of the efficiency of the whole structure itself and not of its component parts and the workmanship alone.

Same—Parties Bound by Contract as Made.
2.   The fact that a contract entered into with full knowledge and understanding of the subject matter may prove unwise or burdensome to one of the parties is not a ground for relieving him from performance of it according to its terms.

*Appeal from District Court, Carbon County; Frank P. Leiper, Judge.*

Action by J. M. Breen and Grant Van Sant against the Security Bridge Company. Judgment for defendant, and from an order granting a new trial, defendant appeals. Affirmed.

*Messrs. Nichols & Wilson,* for Appellant, submitted a brief; *Mr. Edmund Nichols* argued the cause orally.

"Where he [the builder] agrees to build according to certain specifications, and guarantees the sufficiency of the work, he is not required to do more than the specifications call for, and there is no implied agreement on the part of the contractor that the work when completed, according to plans and specifications, will be safe and fit for the purposes intended." (9

C. J. 745, 746; *City of New York* v. *Pennsylvania Steel Co.,* 206 Fed. 454, 124 C. C. A. 360; *Mannix* v. *Tryon,* 152 Cal. 31, 91 Pac. 983; *Bancroft* v. *San Francisco Tool Co.,* 120 Cal. 228, 52 Pac. 496; *Filbert* v. *City of Philadelphia,* 181 Pa. St. 530, 37 Atl. 545; *McKnight Stone Co.* v. *City of New York,* 160 N. Y. 72, 54 N. E. 661; *Ward* v. *Pantages,* 73 Wash. 208, 131 Pac. 642; *Rosenblum* v. *Butchers Co.,* 113 N. Y. Supp. 604, 61 Misc. Rep. 263; *Bush* v. *Jones,* 144 Fed. 942, 6 L. R. A. (n. s.) 774, 75 C. C. A. 582.)

*Mr. T. B. Weir* and *Mr. D. Heywood Hardy,* for Respondents, submitted a brief; *Mr. Hardy* argued the cause orally.

The contract of guaranty is a guaranty of the structure and not merely a guaranty of the workmanship and material in the structure. (*Kellogg Bridge Co.* v. *Hamilton,* 110 U. S. 108, 28 L. Ed. 86, 90, 3 Sup. Ct. Rep. 537 [see, also, Rose's U. S. Notes]; *City of Lakeview* v. *MacRitchie,* 134 Ill. 203, 25 N. E. 663; *Ideal Heating Co.* v. *Kramer,* 127 Iowa, 137, 102 N. W. 840; *Cooper* v. *Scott Co.,* 143 Iowa, 744, 120 N. W. 631; *Stillwell etc. Co.* v. *Phelps,* 130 U. S. 520, 32 L. Ed. 1035, 9 Sup. Ct. Rep. 601 [see, also, Rose's U. S. Notes]; *Miller* v. *Winters,* 144 N. Y. Supp. 351; see, also, *Wilson* v. *Cooper,* 95 Fed. 625; *Florida R. R. Co.* v. *Smith,* 21 Wall. 255, 22 L. Ed. 513 [see, also, Rose's U. S. Notes]; *Manufacturers' Auto Sprinkler Co.* v. *Galbraith, etc.,* 196 Fed. 472, 116 C. C. A. 246.)

MR. JUSTICE GALEN delivered the opinion of the court.

In this action plaintiffs seek to recover $26,200 as damages for breach of contract in the construction of "a pile trestle and combination span to support a steel flume over the Clarke Fork River, to carry off the waters of the Badger Ditch," for use in the irrigation of crops grown on plaintiffs' lands. It appears that the plaintiffs owned and were in the actual possession of a large quantity of land located in Park county, Wyoming, between 1,600 and 1,700 acres of which were agri-

cultural in character, and upon which crops could be success-
fully produced only by artificial irrigation. In the fall
of 1916 they entered into negotiations with the defendant com-
pany for the erection of a trestle and flume, and, the defend-
ant having prepared and submitted proposed plans and specifi-
cations for the work, a written contract was entered into
between the parties on January 23, 1917, for its construction.
By such contract the defendant agreed "to furnish the dimen-
sion lumber, hardware and steel for combination trusses, and
to construct and complete ready for the placing of the steel
flume a pile trestle and combination span over the Clarke Fork
River, to carry the waters of the Badger Ditch, according to
the plans and specifications which are hereto annexed and
made a part of this contract"; the plaintiffs being required
"to furnish the piles, rough timbers, concrete material, haul-
ing material to site of structure, team work, and the flume
proper"; the defendant "to erect the steel flume and concrete
abutment." It is then recited that the defendant "hereby
guarantees the workmanship and material, except the steel
flume material, in this structure to do the work for which the
structure is intended, providing that no failure is caused by
unusual action of the elements, for period of five years from
date." The work was fully completed in March, 1917, and in
the season of 1917 the plaintiffs had seeded upon their lands
with small grain and alfalfa about 800 acres, which was irri-
gated by means of the water conveyed by use of such flume.
About the 14th of June, 1917, the trestle, span and steel flume
were washed out by high water, there being no other unusual
action of the elements, in consequence of which the flow of
such water was stopped, preventing the plaintiffs from irrigat-
ing their crops, with resulting damages. Upon issue joined
the case was tried to a jury, and, at the conclusion of the evi-
dence introduced by the plaintiffs a nonsuit was granted on
defendant's motion, upon which judgment was entered. Sub-
sequently a motion for a new trial was granted, and the cause
is before us on appeal from the order granting a new trial.

The only question presented for consideration is whether the court erred in granting a new trial.

Plaintiffs' right of recovery is predicated entirely upon breach of contract, dependent solely upon an interpretation of the language employed. The decisive point is: Did the parties intend a warranty of the workmanship and materials used by the defendant in the construction, or a guaranty of the structure to do the work for which it was intended? Defendant's learned counsel contend: "The language of the contract very plainly limits the warranty to the workmanship and material. * * * The defendant did not contract to build a structure which would be sufficient for the purpose for which it was intended. It contracted to build a structure in accordance with the plans and specifications therefor, and to employ therein competent workmanship and good and proper quality of materials. And how can it reasonably be argued that the parties intended that the defendant should warrant anything more than it contracted? * * * There is no proof that they were defective. The proof is that the structure collapsed, and the proof tends to further show that it collapsed as the result of high water. But, so far as the record discloses, it may be assumed as logically and reasonably that it collapsed because the timbers were too light as that it collapsed because of defective workmanship and materials." The fallacy of defendant's premise is apparent from the mere statement thereof.

Applied to the facts, and stripped of surplus verbiage, the defendant clearly guaranteed the workmanship and material in the structure to do the work for which the structure was intended for five years. In our opinion, the language amounts simply and plainly to a warranty that the completed structure would accomplish the purpose for which it was erected for a period of five years. "Unusual action of the elements" alone is excepted from the words of guaranty, plainly indicative that the structure would withstand, with this one exception. This exception may, and doubtless did, have reference to lightning, earthquakes or the like, but not to high water, or floods, as the de-

fendant contracted with full knowledge of the likelihood thereof. The trestle and flume crossed a swiftly flowing mountain stream, the waters of which were annually greatly augmented by rain and melting snow; and in its answer the defendant admits that the "river is subject to annual freshets, changes and floods, and that this fact was known" to it at the time of the execution of the contract.

The defendant prepared the plans and specifications for the work, and the contract not only makes specific reference thereto as a part thereof, but provides for construction in accordance therewith. With full knowledge of its own plans and design for the work, the defendant warranted the structure to do the work for which it was intended for a period of five years. Clearly it was the medium desired and intended to accomplish plaintiffs' purpose which was guaranteed, i. e., the completed structure, not alone the component materials and workmanship. Plaintiffs' purpose was to convey water for irrigating purposes across Clarke Fork River, and this could not be accomplished without an adequate flume in place. The guaranty was of the efficiency of the whole, rather than its parts. If this be not the correct interpretation of the language employed, then we inquire, Why use the words "to do the work for which the structure is intended"? Defendant's liability to respond in [2] damages for failure of the work to stand is manifest. Its attempted evasion of its contractual obligation is predicated on a most flimsy pretext. Defendant made its own bargain, and, even though the contract may now appear unwise or burdensome, it must be held to performance. (State Bank of Darby v. Pew, 59 Mont. 144, 195 Pac. 852; Frank v. Butte & Boulder Min. & Lbr. Co., 48 Mont. 83, 135 Pac. 904; Mc-Crimmon v. Murray, 43 Mont. 457, 117 Pac. 73.) The rule laid down in the case of State Bank of Darby v. Pew, supra, respecting the obligation of a contractor on a warranty of the sufficiency of the structure when completed, is much more forcible in application in the present instance. Where possible, courts must enforce contracts as made by the parties,

and, as no ambiguity or uncertainty appears respecting defendant's obligation, the order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.