BATCHOFF, Appellant, v. MELZNER, Respondent.

(No. 5,533.)

(Submitted September 25, 1924. Decided October 20, 1924.)

[230 Pac. 48.]

*Contracts — Duty of Courts — Findings not Warranted by
Pleadings nor Evidence—Effect on Judgment—Conflict in
Evidence—Appeal and Error.*

Finding Unsupported by Pleading or Evidence—Judgment Based
Thereon Void.
1. A judgment based upon a finding, supported by neither pleading
nor evidence and wholly at variance with the claims of the parties,
to the effect that they had entered into a supplemental agreement,
cannot be sustained.

Contracts—Duty of Courts.
2. It is the duty of courts to interpret contracts which are open to
interpretation and enforce them as made, not to make new agree-
ments for them or alter or amend those they themselves have made.

Findings—When Conclusive.
3. Where the evidence in an action tried without a jury is in sharp
conflict and does not preponderate against the findings of the court,
they will not be disturbed on appeal.

*Appeal from District Court, Silver Bow County; Wm. E.
Carroll, Judge.*

Action by D. A. Batchoff against A. B. Melzner. Judg-
ment for defendant and plaintiff appeals. Affirmed in part;
reversed and remanded in part.

*Messrs. Lamb & Malloy,* for Appellant, submitted a brief;
*Mr. Edwin M. Lamb* argued the cause orally.

*Messrs. Canning & Geagan* and *Messrs. Wheeler & Bald-
win,* for Respondent, submitted a brief; *Mr. P. E. Geagan*
argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

This case was tried to the court without a jury. At the
close of the testimony, plaintiff and defendant each requested

the court to make findings, and submitted such as he desired adopted. The court did not, in terms, adopt either, but made findings and conclusions of its own and entered a judgment in favor of the defendant. From this judgment the plaintiff has appealed.

Two causes of action are set forth in the complaint, the first of which alleges that on or about the seventh day of January, 1919, the plaintiff became the owner of an option for the purchase of 8,600 shares of the stock of the Cascade Silver Mines and Mills Company, upon the following terms: 2,150 shares at thirty cents per share, payable on or before May 1, 1919; 2,150 shares at forty cents per share, payable on or before May 1, 1919; 2,150 shares at fifty cents per share, payable on or before July 1, 1919; and 2,150 shares at sixty cents per share, payable on or before August 1, 1919—and continued to be the owner of the option until it was exercised and disposed of as set forth in paragraph 2 of the complaint, which alleges that on or about the first day of May, 1919, the defendant stated and represented to him that inasmuch as he (defendant) and H. L. Maury were partners engaged in, and contemplating engaging in, mining deals and similar transactions, and were going to make large amounts of money in such transactions, "that, if the plaintiff would split the said option belonging to plaintiff with the defendant fifty-fifty, the defendant would see that the plaintiff should and would receive a share equivalent to the amount of money the plaintiff gave the defendant, in any future mining or other venture that the defendant and said Maury may have, which proposition so made the plaintiff, the plaintiff then and there accepted, and thereafter, in accordance with said agreement between plaintiff and defendant, the plaintiff and defendant exercised their rights under said option and took up the stock described" therein, and during the months of May, June and July of said year sold said stock, and after paying the option price therefor, there remained the sum of $11,910, which sum

of money the plaintiff and defendant divided, giving them $5,955 each.

It is further alleged that the defendant and Maury, subsequent to that time, engaged in mining deals and similar transactions which resulted in profits to them in a sum exceeding $40,000, the exact amount of which was unknown to the plaintiff; that the defendant, "since the receipt of said $5,955 in trust for the uses and purposes described in paragraph 2 of this complaint, has not in any manner accounted to the plaintiff therefor"; that prior to the commencement of the action the plaintiff requested of the defendant an accounting of said sum of $5,955; that the defendant had refused to account therefor, and had disavowed any liability to the plaintiff under said agreement or otherwise, and has always refused and neglected to account to the plaintiff for any part of said money; that the plaintiff has elected to require the defendant to return the said sum, together with interest, and that it has never been paid, and that by reason thereof the defendant is indebted to the plaintiff in the sum of $5,955, with interest.

To this first cause of action the defendant filed an answer, in which he denied that the plaintiff became the owner of the option mentioned therein, but alleged that said option was given to the defendant and the plaintiff; that it was taken and held in the name of the plaintiff, and that thereafter it was exercised by plaintiff and defendant, the stock mentioned therein sold, and the proceeds, after paying the option price as set out in the complaint and answer, divided between the plaintiff and defendant; admitted that the defendant and Maury were engaged in mining deals or mining enterprises subsequent to the seventh day of January, 1919, and denied all of the other allegations of the first cause of action.

Under the pleadings, it is admitted that the option was given; that it was exercised according to its terms; that the stock was sold; that, after paying the option price for the stock out of the proceeds of the sale, the balance was divided between plaintiff and defendant.

In passing, it may be observed that there is no dispute in the evidence over the amount received from the sale of the stock. Both plaintiff and defendant testified that, after deducting from the total selling price of the stock the amount paid to the company therefor and all expenses of sale, $11,910 remained, which was divided between them, each taking one-half. So that the primary inquiry arising under this cause of action is: Was the option in question given to the plaintiff for his sole benefit, or was it issued in plaintiff's name for the joint benefit of himself and defendant?

The testimony introduced to sustain the first cause of action tended to show that the plaintiff for several years had occupied an office with the firm of Maury & Melzner and had rendered sundry services for them; that said firm, in addition to being engaged in the practice of law, was interested in a certain mining corporation known as the Cascade Silver Mines & Mills Company, and that during the year 1918 the plaintiff had rendered services for the company in the sale of stocks and bonds under an oral agreement with its vice-president that he should be compensated therefor by being given an option for the purchase of certain shares of its stock, and in fulfillment of this oral agreement, at a meeting of the board of directors of this corporation, on January 7, 1919, a resolution was duly passed and adopted, giving to the plaintiff the option set out in the complaint.

The plaintiff testified that these 8,600 shares of stock were issued and placed in the safe in the office of Maury & Melzner, to be delivered as paid for, and subsequent thereto, along about the 1st of May, the defendant came to him and suggested that they enter into an agreement for a division of the option; his testimony in that respect being that the defendant said to him: "You realize, Batchoff, Maury is a very brilliant man and capable of promoting mining deals. This is not going to be the only thing that is going to be promoted and carried to success in the office. There are other things coming up. You also realize that you are not recognized as a partner

in those kinds of dealings, and how would you like to share in the future with us in any mining venture that we have?'' To which the plaintiff replied that such an arrangement would be agreeable to him; whereupon the defendant said: ''Well, if you do, split that option with me and I will let you in on any kind of a promotion that we may have in the future, that you may share with us on the ground floor.'' To which suggestion the plaintiff agreed, and says that thereupon, in pursuance of the agreement, he indorsed and turned over to the defendant the 8,600 shares of stock. The testimony also shows that soon after this conversation the stock mentioned was placed on the market and all disposed of during a period of three or four weeks, and the net amount received therefor was divided between the plaintiff and the defendant.

The plaintiff also testified that no consideration passed to him from the defendant for an assignment of a half interest in this option, except the agreement above mentioned; that about June 1, 1923, he demanded an accounting from the defendant for this money, or its proceeds, and the defendant denied any liability to him whatever on account of this transaction. There was no dispute as to the method of payment for the stock. The defendant testified: ''Q. Did you pay for it, or did Batchoff pay for it? A. Oh, Batchoff paid for it in this way, that sales were made. * * * I would handle the thing as agent for Batchoff and Melzner. We paid the company for the stock, and it would be taken out. Batchoff paid for the option just as much as I did.''

The plaintiff introduced other testimony tending to sustain the allegations of the first cause of action, to which it is not necessary to make reference.

The testimony showed that prior to November, 1918, B. K. Wheeler was associated with Maury & Melzner in the practice of law, under the firm name of Maury, Wheeler & Melzner, and in connection with that business Maury and Wheeler had become possessed of certain shares of stock in the Cascade Silver Mines & Mills Company.

In support of his defense to the first cause of action, the defendant testified that about the 1st of November, 1918, the firm of Maury, Wheeler & Melzner was dissolved and was succeeded by the firm of Maury & Melzner. At the time of the dissolution of the Maury, Wheeler & Melzner partnership, Wheeler was given 35,000 shares as his portion of the stock that had been received by the firm from the Cascade Silver Mines & Mills Company. Shortly after the Maury and Melzner partnership was formed, Maury suggested that they, together with plaintiff and one Brabrook, attempt to secure this stock from Wheeler. At that time neither defendant, Maury, Batchoff nor Brabrook had any money, and a plan was devised to secure the stock, which consisted of Batchoff making the actual negotiations with Wheeler, which he did, and reported that they could get it for $4,250. To raise the money, a note signed by Batchoff, Maury and defendant, was given to one Simon Bank who advanced $1,000 to the parties; and finally defendant proposed that he might be able to raise $3,000 of the money by placing a mortgage on his home. Some time in December defendant did arrange for a loan of that amount, which was not completed until the 3d of January, 1919, but he obtained an advance of $1,000 of the amount on December 21, 1918, which he gave to Batchoff, who already had the $1,000 secured from Bank. Batchoff then went to Wheeler and received from him a written agreement, which provided, in substance, that, in consideration of the sum of $2,000 paid to Wheeler, Batchoff had the right to purchase the 35,000 shares of Cascade stock for an additional sum of $2,250, at any time within fifteen days, and, further, that the stock should be deposited in the First National Bank of Butte in escrow, and upon payment of the balance should be delivered to Batchoff; that, in the discussion of the method of raising the money had between Brabrook, Batchoff, Maury and himself, Maury and Brabrook stated to him that Batchoff had previously sold some bonds of the Cascade Company, and that as officers and directors of the company they were in position

to give him an option on some stock, and that if he (defendant) would furnish the balance of the funds to finance this deal they would issue this option to Batchoff, and that he and defendant could divide it equally for their services in securing the Wheeler option.

Defendant completed the loan, which gave him $2,000 additional to put in the deal. The remaining $250 was raised by sale of 1,000 shares of Wheeler stock. The balance of the purchase price was then paid, and the certificate for 35,000 shares turned over to the defendant; whereupon a written agreement was entered into concerning it, which recited the conditions of its purchase; that Melzner had paid $3,000 thereon, and provided that Batchoff and Maury should pay the amount due on the note to Simon Bank; that Melzner should hold the certificate for 35,000 shares until Maury, Batchoff and Brabrook should pay to him the sum of $2,000, and that the interest of each of the parties to the agreement should be one-fourth of the 35,000. The witness continued, "Immediately upon the securing of that stock, I took charge of the entire matter," and proceeded to sell off sufficient of the stock to repay the purchase price thereof, and thereafter the balance of the stock remaining was split up and divided between the parties to the agreement, in accordance with its terms.

Other testimony was introduced tending to support the defendant's contention.

In rebuttal, the plaintiff and H. L. Maury both testified that there was no connection between the Batchoff option for 8,600 shares and the Wheeler option for 35,000; that there was no discussion whatever, as testified to by defendant, that he was to have a half interest in the Batchoff option, in consideration of his furnishing the funds to finance the Wheeler deal.

Upon this record the court made its findings as to the first cause of action. Responding to the primary inquiry with which our discussion began, namely, whether the Batchoff

option was given to the plaintiff for his sole benefit, or whether it was issued in his name for the joint benefit of himself and the defendant, finding No. 8 recites the granting of this option to the plaintiff and concludes as follows: "This option ran to Batchoff personally and was, as the evidence shows, extended to him in consideration and recognition of services previously rendered by him in the sale and disposal of certain bonds of the Cascade Silver Mines & Mills Company. *   *   *   *"

Finding No. 9 negatives defendant's contention that this option was given to plaintiff and defendant in connection with the Wheeler transaction, and is as follows: "(9) That this transaction of 8,600 shares was not at the time involved in, connected with, founded upon, or agreed to be divided as an adjunct to, the Wheeler stock above mentioned, but, as stated, ran to Batchoff personally, and to no one else, and is the stock involved in the first cause of action stated in the complaint."

The court's finding No. 10 is as follows: "That thereafter, the exact date not being disclosed by the testimony, but at some time during the period from January 7, 1919, until the eighth day of April, 1919, and during the time defendant Melzner was engaged in handling the Wheeler stock, the plaintiff and the defendant entered into an agreement as to the 8,600 shares referred to, and agreed that said stock should be bought and paid for and dealt with in the market, and that each was to receive one-half of any and all profits from their dealings in the market; that said defendant Melzner was to finance the deal and attend to the details regarding the sale and disposal of the same in the stock market, and to account to the plaintiff for a one-half part of any and all profits made in the handling of the 8,600 shares."

Based on the contract set out in the last-quoted finding, the court's findings 11 to 14 declare in effect that Melzner took over the Batchoff option stock and the Wheeler stock, disposed of enough Wheeler stock to repay the purchase price thereof, divided the balance amongst the parties entitled thereto, and also took over the Batchoff option stock, sold it on the market,

divided the net proceeds between himself and Batchoff, thus closing the deal, and concludes that the plaintiff is not entitled to recover on the first cause of action.

By twelve specifications of error the plaintiff challenges findings 11 and 14 and the conclusions of law based thereon, upon the ground that they are inconsistent with findings 8 and 9. The correctness of findings Nos. 8 and 9 is not questioned on this appeal. Unless the conditions determined by these two findings were changed, then the court's findings 11 to 14 were clearly inconsistent with them and entirely without justification upon the record.

In its finding No. 10 the court determined that these conditions were changed by a subsequent agreement which it recites. Plaintiff's counsel, however, assert that finding No. 10 is unwarranted by either pleading or proof in the case. This contention must be sustained.

The foregoing summary of the pleadings demonstrates that no contract such as the one referred to in finding No. 10 was mentioned in either the complaint or answer; and a study of the entire record has failed to disclose that such a contract was referred to at any place. Counsel for respondent has not directed attention to any evidence which tends, in the least, to indicate that such an agreement as that referred to was ever made. It thus appears that the court found that a contract existed, in reference to which there was neither pleading nor proof, and which is wholly at variance with the claim of either plaintiff or defendant, and that this contract was made the basis of this judgment upon the first cause of action.

No rule of law is better established than that which declares [2] that it is beyond the power of a court to make agreements for parties, or to alter or amend those which the parties themselves have made. The duty of the court is to interpret contracts which are open to interpretation and to enforce them. (*State Bank of Darby* v. *Pew,* 59 Mont. 144, 195 Pac. 852; *General F. E. Co.* v. *Northwestern Auto*

*Supply Co.,* 65 Mont. 371, 211 Pac. 308; *McConnell* v. *Black-ley,* 66 Mont. 510, 214 Pac. 84.)

Since the judgment of the court upon the first cause of action is based on the erroneous assumption that the plaintiff and defendant entered into a contract such as is set out in finding No. 10, it follows that it cannot be sustained.

The second cause of action set out in the complaint alleges that during the years 1919, 1920, 1921 and 1922 the defendant and H. L. Maury were engaged in business at Butte and elsewhere under the firm name of Maury & Melzner, and that during said time the plaintiff performed services for this firm without any agreement as to the amount of compensation which he was to receive therefor; that about April 1, 1922, it was agreed between said Maury & Melzner and plaintiff that, as payment for such services, said firm should and would transfer and deliver to plaintiff 1,611 shares of the capital stock of the Silver Dyke Mining Company, and in accordance with this agreement said firm delivered to the defendant 805 shares of said stock, to be turned over to plaintiff on demand, and that the defendant received and accepted said 805 shares of stock under said agreement; that prior to the commencement of this suit the plaintiff made demand upon the defendant for the delivery to him of said stock, which demand was refused. The prayer asks that the defendant be required to deliver said 805 shares of stock to the plaintiff, or for such other relief as plaintiff may equitably be entitled to.

The answer admits the partnership between Maury and Melzner, alleges that it was a partnership only for the practice of law, and admits that plaintiff performed services for said firm as alleged in the second cause of action, but asserts that he had been fully paid therefor.

The testimony upon the second cause of action covers several hundred printed pages. To epitomize it would unduly extend this opinion. It has all been read and considered. At most it presents substantial differences upon the theories contended for by the opposing parties.

After hearing the testimony of the witnesses, both for plaintiff and defendant, the court found as a matter of fact that the firm of Maury & Melzner never delivered to the defendant Melzner any shares of stock in the Silver Dyke Company for plaintiff's benefit, that defendant never received or accepted any such shares of stock for the plaintiff, and that the plaintiff was not entitled to recover on his second cause of action. The [3] evidence as to the second cause of action is in perplexing conflict. It cannot be said that it preponderates against the court's findings, and for this reason they will not be disturbed upon appeal. (*Nolan* v. *Benninghoff*, 64 Mont. 68, 208 Pac. 905; *Thomas* v. *Standard Dev. Co.*, 70 Mont. 156, 224 Pac. 870.)

For the reasons herein indicated, the judgment of the trial court upon the second cause of action set forth in the complaint of plaintiff is affirmed, and the judgment entered on the first cause of action is reversed and the cause remanded to the district court for further proceedings. Each party will pay one-half the costs of this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES RANKIN, GALEN and HOLLOWAY concur.