FRANK ET AL., RESPONDENTS, *v.* BUTTE & BOULDER MINING & LUMBER CO., APPELLANT.

(No. 3,274.)

(Submitted September 18, 1913. Decided. October 11, 1913.)

[135 Pac. 904.]

*Contracts—Interpretation—Payment Out of Special Fund— Nature of Liability.—Appeal—Briefs—Assignments of Error —Waiver.*

Appeal—Briefs—Assignments of Error—Waiver.
1. Assignments of error not argued in appellant's brief will be treated as waived.

Contracts—Payment Out of Special Fund—Nature of Liability.
2. *Held*, under the rules prescribed by the Codes for the interpretation of contracts, that by a writing which provided that a loan to a corporation should be repaid monthly "out of the first.earnings of its business, after deducting running expenses," it was not intended to create a general liability on the part of the company to be paid after a reasonable time, but to make the indebtedness payable out of a special fund consisting of the net proceeds as rapidly as they accumulated.

Same—When Interpretation Unnecessary.
3. Where the words employed in a written contract are clear, certain and unambiguous, interpretation may not be resorted to to ascertain its meaning.

Same—Interpretation—Province of Courts.
4. It is the province of courts to interpret contracts which are open to interpretation, not to make new ones for the parties or to alter or amend those which they themselves have made.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Esther Frank and others against the Butte & Boulder Mining & Lumber Company.  From a judgment for plaintiffs, defendant appeals.  Remanded with directions.

*Mr. John F. Davies,* and *Mr. Louis E. Haven* submitted a brief in behalf of Appellant; *Mr. T. J. Davis,* of counsel, argued the cause orally.

The contract and agreement upon which this action rests, and upon which plaintiffs rely, is a conditional one.  They must allege and prove, as a condition precedent to their right of recovery, the fact that there were earnings after deducting running expenses.  Not having alleged and proven this, their complaint fails to state a cause of action.  Provision is made in the agreement for the repayment of the loan in a particular manner.  Such a provision is a material condition and cannot be disregarded or construed in any other way without making a new and different contract than intended by the parties.  In *Bagley* v. *Cohen,* 5 Cal. Unrep. 783, 50 Pac. 4, the supreme court of California construing a contract similar to the one at bar, where the language used was ''out of the profits of the business,'' *held* these words to mean that before there can be a recovery on the contract, the plaintiff must prove that the condition happened; must prove that there were profits actually earned; otherwise, he cannot recover.  So, here, it is the contention of the appellants that plaintiffs must allege and prove that there were earnings in the business, before they can recover from the defendants herein.  (See, also, *Rollins* v. *Denver Club,* 43 Colo. 345, 18 L. R. A. (n. s.) 733, 96 Pac. 188; *Lyman* v. *Northern Pac. Elevator Co.,* 62 Fed. 891; *Orman* v. *Ryan,* 25 Colo. 383, 55 Pac. 168; *Toombs* v. *Consolidated Poe Min. Co.,* 15 Nev. 444; *Blodgett* v. *Hall,* 11 Misc. Rep. 626, 32 N. Y. Supp. 788; *Zimmer* v. *Brooklyn Sub-Railway Co.,* 53 Hun, 637, 6 N. Y. Supp. 316.)

*Mr. Chas. R. Leonard,* for Respondents, submitted a brief and argued the cause orally.

It is the contention of the respondents that the provision in the contract in question does not limit repayment of the loan to Frank out of the first earnings of the business of the company; or, in other words, that such provision does not make repayment of the loan dependent or conditional upon earnings being made by the company. Stated differently, the respondents contend the contract in question does not in anywise limit the liability of the company to repay the loan made to it by Frank, but simply undertakes to afford security to Frank for the repayment of the loan made by him, and, in effect, operates to make him a preferred creditor of the company. While the question involved does not appear to have been decided in this state so far as we can ascertain, the highest courts of other states have had it before them for determination and decided in favor of the position taken by the respondents. (See *Busby* v. *Century Gold Min. Co.,* 27 Utah, 231, 75 Pac. 725; *Nunez* v. *Dautel,* 19 Wall. (U. S.) 560, 22 L. Ed. 161; *Harkinson* v. *Dry Placer Amalgamating Co.,* 6 Colo. 269; *Williston* v. *Perkins,* 51 Cal. 554; *Button* v. *Higgins,* 5 Colo. App. 167, 38 Pac. 390; *Johnston* v. *Schenck,* 15 Utah, 490, 50 Pac. 921; *Crooker* v. *Holmes,* 65 Me. 195, 20 Am. Rep. 687; *Hood* v. *Hampton Plains Exploration Co.,* 106 Fed. 408; *Noland* v. *Bull,* 24 Or. 479, 33 Pac. 983; *Pistel* v. *Imperial Mut. Life Ins. Co. of America,* 88 Md. 552, 43 L. R. A. 219, 42 Atl. 210; *Smithers* v. *Junker,* 41 Fed. 101, 7 L. R. A. 264; *Hicks* v. *Shouse,* 17 B. Mon. (56 Ky.) 483; *Noyes* v. *Barnard,* 63 Fed. 782, 11 C. C. A. 424; *Salisbury* v. *Spofford,* 22 Idaho, 393, 126 Pac. 400.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On July 20, 1906, an agreement was entered into between Margaret Northey, Stephen H. Northey, the Butte & Boulder Mining & Lumber Company and H. L. Frank. This agreement is prefaced by an introductory clause which recites that the min-

ing and lumber company had been organized for the purpose of taking over certain mining claims and water rights belonging to Margaret Northey, and for carrying on a general lumber business, and that it was necessary for the company to borrow $30,000 to carry out the purposes of its organization. These recitals are followed by the contracting portions of the agreement, which are: (1) Frank agrees to loan the company $30,000. (2) The mining company agrees to transfer to Mrs. Northey, in payment for the mining claims and water rights, 24,995 shares of its capital stock, being all of its capital stock excepting five shares, the shares being of a par value of $10 each. (3) Mrs. Northey agrees to transfer 9,000 shares of the stock to Frank without any further consideration and as a bonus to him for making the loan to the company. She further agrees to retransfer 1,000 shares to the treasury of the company, to be used in purchasing a sawmill. (4) All the parties agree that the capital stock of the company shall not be increased without Frank's consent. (5) Mrs. Northey agrees to convey to the company the mining claims and water rights mentioned. (6) Stephen H. Northey is to have the use of the surface ground of the mining claims for farming purposes, and he is to be the general manager of the company, with an assistant, to be designated by Frank, who shall have charge of the books and accounts of the company. (7) Until Frank's indebtedness is paid he is to be one of the directors of the corporation and to have the right to name another director. (8) Stephen H. Northey agrees to transfer to the company a certain tie contract which he had with the Milwaukee Railway Company. (9) All the parties agree that no dividends are to be declared until Frank shall have been repaid. (10) All the stock is to be pooled and placed in the First National Bank of Butte, with an agreement that, if any sale of any stock is made, the proceeds shall be divided among the members of the pool in accordance with their respective holdings. The contract further provides: "It is further understood and agreed that the said thirty thousand dollars so advanced and to be advanced by the said H. L. Frank, shall be repaid to

the said H. L. Frank by the said company, out of the first earnings of its business, after deducting running expenses, which said earnings are to be computed and paid over at the monthly meetings of the board of directors of said company.'' The contract is executed on behalf of the company by Frank, president, and Genzberger, secretary.

This action was brought by the heirs of Frank, to recover as for an indebtedness due. They allege the execution of the contract; that the money was actually furnished by Frank and used by the company; that no part has ever been repaid; that the company has never realized any earnings in the operations of its business after deducting its running expenses; and that a reasonable time has elapsed since the defendant received the money from Frank. There is a second cause of action upon an assigned claim. The answer admits the execution of the contract, denies that there is anything due, and sets forth some affirmative matters, which, however, were on motion stricken out, and no exception was reserved. The trial court found the issues in favor of the plaintiffs and rendered judgment for the whole amount claimed upon both causes of action. From that judgment this appeal is prosecuted.

While the appellant in its brief asserts that the complaint does not state a cause of action upon either cause of action set forth in the complaint, no argument whatever is offered in support of that contention, as it applies to the second cause of action, [1] and, under the rule recognized by this court that assignments not argued will be treated as waived (*Winterscheid* v. *Reichle,* 45 Mont. 238, 122 Pac. 740; *Brian* v. *Oregon Short Line R. Co.,* 40 Mont. 109, 20 Ann. Cas. 311, 25 L. R. A. (n. s.) 459, 105 Pac. 489; *Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860), nothing further need be said than that, in our opinion, the second count states a cause of action.

The principal contention arises over the construction of that [2] clause of the contract quoted above. The contention of respondents is that the contingency mentioned in the contract that repayment should be made out of the net earnings of the

company merely postpones the time of payment, and that upon the expiration of a reasonable time the obligation becomes absolute and can be enforced, whether there were any net earnings of the company or not. And in support of this contention a number of cases are cited, including *Nunez* v. *Dautel,* 19 Wall. 560, 22 L. Ed. 161; *Noland* v. *Bull,* 24 Or. 479, 33 Pac. 983; *Smithers* v. *Junker* (C. C.), 41 Fed. 101, 7 L. R. A. 264; *Hicks* v. *Shouse,* 17 B. Mon. (Ky.) 483; *Crooker* v. *Holmes,* 65 Me. 195, 20 Am. Rep. 687, and other cases of like character; but in every one of those cases there was a pre-existing indebtedness, and the contingency mentioned referred only to the time of payment. In our opinion, those cases are not in point. Other cases cited, however, including *Harkinson* v. *Dry Placer Amalgamating Co.,* 6 Colo. 269, *Johnston* v. *Schenck,* 15 Utah, 490, 50 Pac. 921, and *Busby* v. *Century Gold Min. Co.,* 27 Utah, 231, 75 Pac. 725, are cases somewhat similar in their facts to the one before us, and the decision in each is in harmony with the theory of respondents in this case.

Appellant relies upon cases which hold that a contingency, such as the one before us, affects the liability, renders the obligation conditional, and imposes upon the party seeking its enforcement the burden of showing that the contingency has happened or the condition has been fulfilled, before recovery can be had. Among the cases are *Blake* v. *Coleman,* 22 Wis. 415, 99 Am. Dec. 53; *Lyman* v. *Northern Pac. Elevator Co.* (C. C.), 62 Fed. 891; *Munro* v. *King,* 3 Colo. 238; *Toombs* v. *Consolidated Poe M. Co.,* 15 Nev. 444; *Breaux* v. *Lauve,* 24 La. Ann. 179; *Tebo* v. *Robinson,* 100 N. Y. 27, 2 N. E. 383; *Orman* v. *Ryan,* 25 Colo. 383, 55 Pac. 168; and *Congdon* v. *Chapman,* 63 Cal. 357. The conflict, however, between the cases cited by appellant and those relied upon by respondents, is more apparent than real. Every case has been decided upon its own peculiar facts and surrounding circumstances, the courts being unable to formulate any definite, general rule upon the subject. The authorities are therefore of little, if any, value as precedents.

There is not anything peculiar about the contract before us. There is not any question of fraud or mistake involved. The parties do not seek to have the contract reformed; on the contrary, they rely upon it as it was written, and we are to determine its meaning by the rules which our Codes prescribe. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Rev. Codes, sec. 5025; *State ex rel. Coburn* v. *District Court,* 41 Mont. 84, 108 Pac. 144.) "The language of a contract is to govern its interpretation if the language is clear and explicit, and does not involve an absurdity." (Section 5027; *Quirk* v. *Rich,* 40 Mont. 552, 107 Pac. 821.) "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title." (Section 5028; *Stadler* v. *First Nat. Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111.) In *Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761, this court said: "It is a well-settled rule of law that the circumstances under which a contract is made, or the intent of the parties existing at that time, are only material when the contract is ambiguous in some of its terms. If it is plain and unambiguous, it needs no construction, and it is the duty of the court to enforce it as made by the parties."

In the contract before us the parties appeared entirely capable of expressing themselves in plain, terse English. No one complains that the language employed is not explicit or that it is [3] open to construction. Under like circumstances, in *Harris* v. *Root,* 28 Mont. 159, 72 Pac. 429, Chief Justice Brantly, speaking for the court, said: "The contract is clear and explicit in its terms, and its construction involves no difficulty. To its language alone, therefore, must we look in order to find the intention of the parties." In speaking of the provisions of section 5025, above, this court, in *Quirk* v. *Rich, supra,* said: "This section simply means that the intention of the parties shall be ascertained in the first instance by reference to the language employed by them. Where the words used are clear, certain and

unambiguous, interpretation may not be resorted to." There are not any words in this agreement employed in a strictly technical sense, and those that are used are therefore to be understood according to their ordinary and popular meaning. (Rev. Codes, sec. 5033.) Taking this contract before us as it is written and giving to its words their ordinary and popular meaning, the result cannot be in doubt. The parties explicitly agreed that Mr. Frank should be paid from a special fund as rapidly as it should be accumulated. The meaning of the parties is not left in doubt. If it was their intention to create a general liability on the part of the mining company which would subject all of its property to seizure in satisfaction of Frank's claim, why, then, should they say, in the portion quoted above, that Frank's indebtedness was to be paid out of the first net earnings of the company's business?

In *Lyman* v. *Northern Pac. Elevator Co.*, above, it appeared that the elevator company issued its notes or evidences of indebtedness which provided that they should be "paid out of the first net earnings of the company"; of this Judge Williams said: "It is very clear from the agreement and note, which must be read as one paper, that there is no liability of the company on this note, except out of the net earnings, and that, if net earnings have not been made, it cannot be contended that the company is liable for the face of the note as absolutely as if there was no provision either in the note, or in the contract of August 15, 1890, respecting the payment out of the net earnings. Certainly, the clause was inserted for some purpose—either to limit the liability or to add to the security of the stockholder. It certainly does not add to his security, for if no provision had been inserted when the note became due, not only the net earnings but all of the company's property could have been applied to the payment of the note. It therefore limited the company's liability to the net earnings. If it was intended as a pledge of the net earnings as security, such language would have been used in the contract; but the contract does not provide that the net

earnings are pledged as security, but rather limits the payment to the net earnings.''

Whatever impulses may control individual action, courts must [4] be governed by law. It is their province to interpret contracts which are open to interpretation, or they may enforce obligations, but it is beyond their power to make agreements for parties or to alter or amend those which the parties themselves have made. (*McCrimmon* v. *Murray,* 43 Mont. 457, 117 Pac. 73.) In order to uphold this judgment, we must say that these parties agreed to repay Frank within a reasonable time out of the net proceeds of the company's business, if there were any, but, if there were none, then out of the property of the company generally. To do this would be to create a new obligation so far different from the one which the parties themselves executed that they would never recognize it.

In *Congdon* v. *Chapman,* above, there was involved a writing by which Chapman agreed to pay Congdon for certain shares of stock in a mining company ten cents per share ''from the first moneys which can be realized from the sale of any stock of said company owned or controlled by him;   *   *   *   and said Chapman agrees to use all reasonable efforts to realize on the stock of said company owned or controlled by him without unnecessary delay, to the end that said payment may be made to said Congdon.'' In an action by Congdon against Chapman to enforce payment upon the theory that the shares were to be paid for within a reasonable time, whether Chapman sold his stock or not, the court held the defendant not liable, and said: ''By this agreement the parties clearly expressed their intention that the stock should be paid for out of the first moneys that could be realized from the sale of any stock of the company owned or controlled by Chapman; the latter further agreeing to use all reasonable efforts to realize on the stock without unnecessary delay, 'to the end that said payment may be made to said Congdon.' At the trial the court below found that the defendant used reasonable diligence and made all reasonable efforts to sell the stock, but had been unable to sell any of it. Under such

circumstances, to hold the defendant liable in this form of action would be to make and enforce between the parties a contract essentially different from the contract that they themselves made and from that declared on herein.''

In so far as the judgment in favor of the plaintiffs is based upon the first cause of action it is erroneous. The cause is remanded to the district court, with directions to dismiss the complaint as to the first cause of action and to enter judgment in favor of plaintiffs upon the second cause of action *nunc pro tunc,* as of the date of the original judgment. Each party will pay his own costs of this appeal.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

