[Civil No. 2160. Filed June 16, 1924.]

[226 Pac. 1092.]

A. C. KIRCHOFF, Appellant, v. JOHN CUMMARD, Appellee.

1. EVIDENCE — PAROL EVIDENCE ADMISSIBLE TO SHOW WHETHER BROKER'S COMMISSION IS PAYABLE ONLY OUT OF INSTALLMENT OF PURCHASE PRICE.—Where a contract provided that a broker was to be paid out of a certain installment of the price, "provided such payment be made," parol testimony was admissible to show the situation of the parties and the circumstances existing at the time of its execution, in determining whether the commission was due only if the installment was paid, or whether it was due at all events.

2. BROKERS—EVIDENCE SUPPORTS CONCLUSION THAT A PROVISION IN A BROKER'S CONTRACT CALLED FOR PAYMENT OF COMMISSION REGARDLESS OF WHEN AN INSTALLMENT OF PRICE WAS PAID.—Evidence *held* to support conclusion that provision in contract that broker's commission was to be paid out of a certain installment of the purchase price, due within a year, "provided such payment be made," meant that the commission was to be paid out of the installment, if it was received, but, if not, then out of some other fund.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

1.  See 4 R. C. L. 331, 336; 6 R. C. L. 849.
    See 9 C. J. 656; 13 C. J. 631; 22 C. J. 1181.

Messrs. Silverthorn & Van Spanckeren, for Appellant.

Messrs. Allen & Alldredge, for Appellee.

McALISTER, C. J.—This is an action to recover a real estate broker's commission. Appellant, defendant below, signed a listing contract by which he employed appellee to procure a purchaser for 80 acres of land situated in Maricopa county, this state, for a consideration of $48,000 to be paid upon the following terms: $14,000 cash, and the balance at $5,000 per year, deferred payments to bear 8 per cent interest. The contract was dated January 5, 1920, and provided for the payment of a commission of 5 per cent of selling price.

Some time thereafter appellee found and offered as purchasers Reaves A. Bird and Harry H. Smith, who were able and willing to purchase the land for a consideration of $48,000 to be paid as follows: $6,000 cash; $4,000 as soon as an abstract to premises could be had and examined; $7,500 on or before January 1, 1921; $6,000 on or before January 1, 1922; $5,000 on the first of each year thereafter until total amount should be paid. This proposal was accepted, and on February 5, 1920, appellant and his wife entered into a binding contract with Bird and Smith by which they agreed to sell, and the latter to purchase, the land, and this agreement, together with deed conveying the premises, was placed in escrow. On the day this contract was executed and at the same time, however, appellant and appellee entered into an agreement in words and figures as follows, to wit:

"This agreement, made and entered into this 20th day of February, 1920, by and between Adolph C. Kirchoff, party of the first part, and John Cummard and O. C. Kleinman, parties of the second part, witnesseth:

26 Ariz.—33

"That whereas, the party of the second part has, as agent for the first party, negotiated sale of eighty acres in section 18, one north of range 6 east, of the first party to Reaves Bird and Harry Smith, it is hereby agreed as follows:

"That out of the payment of seven thousand five hundred ($7,500.00) dollars coming to the first party under escrow agreement of even date herewith on January 1st, 1921, provided, said payment be made, party of the first part will pay to the second party the sum of twenty-four hundred ($2,400.00) dollars as commission for making said sale, and interest thereon at 8% from Feb. 20th, 1920, and the Salt River Valley Bank of Mesa, the bank in which said escrow papers are to be held is hereby authorized to pay to the second party out of said payment of seventy-five hundred ($7,500.00) dollars when made the said sum of twenty-four hundred ($2,400.00) dollars.

"Witness the hands of the parties this 20th day of February, 1920.

"ADOLPH C. KIRCHOFF.
"JOHN CUMMARD."

The $7,500 was not paid when it became due, nor afterwards; but in the spring of 1921 appellant and Bird and Smith, without appellee's knowledge or consent, entered into a supplemental agreement by which the payment of this installment was extended to January, 1933, and the annual installments reduced from $5,000 to $3,000, and some time in the spring of 1922 they entered into another agreement, also without appellee's knowledge or consent, by which the contract of purchase, together with the supplemental contract, was canceled and possession of the premises redelivered to the seller.

Appellant contends that the above contract superseded the listing contract on the question of the payment of the broker's commission; that, under it, this did not become due until the $7,500 was paid; and that inasmuch as this payment has never been

made no right of action exists. His claim is based upon this language of the contract:

"That out of the payment of seven thousand five hundred ($7,500.00) dollars coming to the first party under escrow agreement of even date herewith on January 1, 1921, provided, said payment be made."

The first clause, it is said, restricts the payment of the commission to a particular fund and creates no liability until that fund comes into existence, and the second refers to the $7,500 due January 1, 1921. The two clauses, it is urged, have the effect of providing that the commission was payable only out of the $7,500, and that no liability existed until this payment was made. The word "provided," it is contended, means "on condition" and creates a condition precedent. *De Vitt* v. *Kaufman County,* 27 Tex. Civ. App. 332, 66 S. W. 224; *Robertson* v. *Caw,* 3 Barb. (N. Y.) 410.

Appellee contends, however, that this contract does not supersede the listing contract upon the question of the payment of the broker's commission, nor do its terms constitute a condition precedent, but, upon the contrary, recognize a pre-existing debt due appellee and merely fix the time of its payment.

There is no question but that the parties could have provided that the payment of the commission should be from a particular fund—for instance, the $7,500 due January 1, 1921—and that such a provision would have been binding (1 Amer. Eng. Cyc. of Law, 2d ed., 1095, 1096; 9 Cyc. 616), and in support of the contention that such is the effect of this contract, appellant relies largely upon *Frank* v. *Butte & Boulder Mining & Lumber Co.,* 48 Mont. 83, 135 Pac. 904, in which the following provision of a contract was given such construction:

"It is further understood and agreed that the said thirty thousand dollars so advanced and to be advanced by the said H. L. Frank, shall be repaid to

the said H. L. Frank by the said company, out of the first earnings of its business, after deducting running expenses, which said earnings are to be computed and paid over at the monthly meetings of the board of directors of said company.''

A company had been organized to carry on a general lumber business, and $30,000 had been advanced by Frank to carry out that purpose to be repaid out of the first earnings of the company, after the deduction of operating expenses, and the court very properly held that this language did not create a general liability but provided for a special fund from which Frank's indebtedness should be paid. In the other cases cited by appellant the language used to define when and how the commission shall be paid leaves no doubt as to the meaning intended. For instance, in *Edwards* v. *Baker,* 39 Cal. App. 755, 180 Pac. 33, the notes given for the commission contained this recital:

''Said note to be paid only out of the money to be paid by P. Weisendanger or his assigns for purchase price of G. L. Baker ranch and not out of interest.''

It will be observed that the contract in the Frank case did not provide that the payment of the $30,000 should be made out of the first earnings, provided there were any, but, so far as appears, from that source or not at all. In the case at bar, however, the contract, after first recognizing the negotiation of a sale of the land by appellee, provides that out of the $7,500 due thereunder on January 1, 1921, ''provided, said payment be made,'' appellant will pay appellee his commission of $2,400 for making the sale. Whether this means that he will pay the commission out of this fund only, or whether he will pay it at all events, that is, out of the $7,500, in case it is made, or out of some other fund in case it is not, does not appear clearly from the terms of the contract. If this clause had been omitted from the agree-

ment, there would be no question but that the commission would be payable only out of this fund, but its presence leaves it doubtful whether the payment of the $7,500 was a condition which had to be performed before liability on the part of appellant arose, or whether it merely postponed the time of payment of the commission. The ordinary meaning of these words is plain, but when considered in connection with the subject matter to which they relate—the payment of the broker's commission—they immediately suggest the two conflicting interpretations urged by the respective parties, and it is obvious that parol testimony could, without varying the terms of the written agreement, be considered for the purpose of disclosing the situation of the parties and the circumstances existing at the time of its execution. In *Alvord* v. *Cook*, 174 Mass. 120, 54 N. E. 499, the broker at the request of the sellers (the Cooks) arranged a contract with one Jewell whereby an exchange of real estate was to be made, and the sellers agreed to convey a portion of the land to be obtained from Jewell and pay a cash balance to the brokers as their commission "when the contract with Jewell is carried into effect." The court said:

"The contract assumed the validity and binding force of the agreement of sale between the principals, and the sentence last above quoted, without the aid of the surrounding circumstances, is susceptible of two interpretations: First, as being a clause for the protection of the defendants and providing that they should pay nothing unless Jewell carried out his contract or the defendants saw fit to make him do so; and, second, as being a clause for the protection of the plaintiffs and limiting the time beyond which they would not have to wait for their commission. Here the situation of the parties and the circumstances existing at the time of the execution of the contract may properly be considered."

In *Klueter* v. *Joseph Schlitz Brewing Co.*, 143 Wis. 347, 32 L. R. A. (N. S.) 383, 128 N. W. 43, the court said:

"As it is a leading rule, in regard to written instruments, that they are to be interpreted according to their subject matter, it is obvious that parol or verbal testimony must be resorted to, in order to ascertain the nature and qualities of the subject, to which the instrument refers. Evidence which is calculated to explain the subject of an instrument is essentially different in its character from evidence of verbal communications respecting it. Whatever, therefore, indicates the nature of the subject, is a just medium of interpretation of the language and meaning of the parties in relation to it, and is also a just foundation for giving the instrument an interpretation, when considered relatively, different from that which it would receive if considered in the abstract."

In accordance with his contract of employment, appellee had procured purchasers willing to pay $48,000 for the property but who were able to make an initial payment of only $10,000 instead of $16,000, which the evidence discloses appellant wanted, notwithstanding the listing contract said $14,000. He decided to sell, however, upon a $10,000 cash payment when he learned that Bird and Smith could pay only that much, but upon the further understanding that Cummard would wait a year for his commission; it appearing that practically all of the $10,000 was needed by appellant in a deal he was making in Tucson. According to appellee, appellant's words were:

"Well, if you fellows will wait for a year for your commission, well, I will let this deal go through for $10,000 down."

It appears further from appellee's testimony that he wanted a note for his commission, but that he was assured by the attorney drawing the papers for both parties, who stated to him at the time that he had

earned his commission, that a contract could be fixed up by which he could get it within a year, and when the agreement which recognizes that he had negotiated the sale was drawn he understood such to be its effect. The phrase, "provided such payment be made," as used in the contract, meant, according to his understanding, that if appellant did not pay it out of the $7,500, he would pay it out of some other fund.

However, appellant, in reply to the question as to what he said when appellee told him he had a purchaser willing to pay $10,000 down, testified:

"I told them that I could not accept that as a business proposition. I thought that I should have $16,000 down, which would be one-third of the price of the property. I further told them that it would not be good business for me to accept a $10,000 payment, and pay commission out of that payment. I told them that I refused to do it. Whereupon a suggestion was made that we reduce the first initial payment, and raise the first annual payment to $7,500. I think this was suggested by Mr. Kleinman."

He testified further:

"I refused to pay commission out of the $10,000 payment. I told them that I would accept that $10,000 payment provided they would take their chance with me on the first annual payment of $7,500, that they were to take the same chance that I was on that first annual payment. If I got my $7,500, they got their $2,400 commission."

The only reason why the first annual payment was fixed at $7,500, instead of $5,000, was, he said, "that I wanted $5,000 out of the place annually after the initial payment, and this would give me $5,000 and their commission out of that payment."

The testimony discloses further that there was no forfeiture of the contract of sale, but that it was terminated in the spring of 1922 by mutual agreement of the parties to it without the knowledge or consent of appellees after the purchasers had paid $10,000 in

principal and $3,120 in interest, $1,520 of the latter in October, 1921, and the remaining $1,600 at the time of cancellation; that about a year previous to the termination of the contract a supplemental agreement was entered into by appellant and Bird and Smith, by which the annual payments were reduced from $5,000 to $3,000, and the installment of $7,500 due January 1, 1921, specifically extended to 1933, or so much thereof as remained unpaid after the proceeds of the 1920 cotton crop, less certain indebtedness, had been applied thereto. It evidently took the entire crop to settle this indebtedness, because no part of the $7,500 was paid. Hence the creation of a particular fund out of which appellee's commission, according to appellant's claim, was exclusively payable, was postponed for a period of twelve years. Just why this supplemental contract so carefully provided that no part of the $3,000 installment due under its terms January 1, 1922, or no portion of those payable annually previous to 1933, should be used to pay this commission, does not appear. The fact remains, however, that under it appellee would have been denied the fruits of his labor until $44,500 in principal, together with the interest thereon, had been paid.

There was other testimony in behalf of the respective parties intended to give the court a correct understanding of their situation and the circumstances surrounding them at the time the contract was executed, and from all of it the court evidently concluded that by the term, "provided, said payment be made," it was the intention of the parties to provide that the commission should be paid within a year, and out of the $7,500 if this installment should be received by appellant, but, in case it was not, out of some other fund. There was ample evidence to support this view and full justification for the conclusion drawn therefrom by the court that in the absence from the contract of the word "exclusively,"

or "only," or some other expression having the effect of showing that the commission was payable from this fund and no other, the contract merely limited the time beyond which appellee was not required to wait for his commission.  Under the conditions it is not reasonable to suppose that appellee would have permitted the matter of his remuneration to depend alone upon the payment of the installment due January 1, 1921.  His efforts had given appellant $10,000 on his land and also a contract compelling the payment of the balance of $38,000 in annual installments of $5,000 each, together with interest thereon, or in default of any one thereof the forfeiture of what had been paid up to that time along with redelivery to himself of possession of the entire property.

The judgment is affirmed.

ROSS and LYMAN, JJ., concur.