**SHANLEY et al. v. HENNINGSON.**
**Civil Action No. 357.**

District Court, D. Montana,
Great Falls Division.

June 13, 1944.

Hall & Alexander and Murch & Wuerthner, all of Great Falls, Mont., for plaintiffs.

Ernest Abel, of Great Falls, Mont., and E. G. Garvey, of Omaha, Neb., for defendant.

PRAY, District Judge.

This is an action for a declaratory judgment, involving the interpretation of certain language contained in a written agreement between the parties hereto, as follows: "All money received from the government as payment on the fixed fee shall be payable to the parties hereto, prorated on the basis of the construction cost of the work respectively performed by each of said parties."

The first introduction the court had to the contract and pleadings in question, and during the settlement of the latter, the language in dispute seemed plain and understandable, but since the trial and after the lapse of nine months, several hundred pages of transcript and briefs have been presented to clarify the issues and simplify the duties devolving upon the court.

It appears from the evidence that on or about July 26, 1941, the government proposed to build an army cantonment at Henry's Lake, Idaho, near West Yellowstone, Montana, and at the suggestion of the War Department, the plaintiffs, who were architects with offices at Great Falls, Montana, and the defendant, who was an engineer with offices at Omaha, Nebraska, entered into a written agreement with the government to perform architectural and engineering work in designing and constructing such cantonment.

Before the execution of the above agreement what is termed a negotiation agreement was entered into by the plaintiffs, the defendant and the government, dated July 24, 1941, setting forth the estimated cost

of construction as $22,800,000; that plaintiffs and defendant would devote their "whole time to the project on a non-reimbursable basis"; that the cost estimate of $22,800,000 was accepted as the basis for the contract; that the resident partner on the site was to be George H. Shanley; that the fixed fee "for preparation of layout, drawings and specifications and contract documents" was fixed at $50,000, and that the fee for supervision, if required, was fixed at $25,000; that prior to the execution of the final contract with the government, shown as exhibit 3, there were certain instruments of the government pertaining to the project in question which also fixed the estimated total construction cost at $22,800,000, which was divided as following: Utilities (engineering work) $4,944,-000, and Buildings (architectural work) $17,856,000. Plaintiffs allege that upon the basis of the foregoing outline of negotiations and instructions, the final contract referred to as Exhibit 3, was agreed to and executed. A partnership agreement between the architects and the engineer was discussed. Plaintiffs indicated that they were willing to proceed without any further agreement, but defendant was not and prepared a rough draft of an agreement which was later drawn by his attorney and submitted by defendant to plaintiffs, and was accepted by all parties as satisfactory; it was the one under which they operated and contains the language which is the bone of contention in this action.

The latest estimate of the construction cost of engineering works, as of October 18, 1941, is shown as $6,185,296, and the estimated construction cost of the structures planned by the architects, including the total amount for all buildings, was given as $18,739,339. Work under the contract was terminated by the government about November 29th, 1941. At a conference of plaintiffs, defendant and representatives of the government thereafter held, an agreement was entered into by which it was determined that the work of the architects and engineer was ninety eight per cent completed, and that $49,000 of the fixed fee of $50,000 was then due and payable to them by the government; and payments were thereafter made, and a distribution was made from the firm bank account by Mr. Shanley of $10,000, to himself, $10,000 to Mr. Henningson and $10,000 to Mr. Van Teylingen, with no complaint from Mr. Henningson. Of the final pay-

ments received from the government, after deducting $714.94 in non-reimbursable items from plaintiffs' share, the remainder in the sum of $18,285 was distributed as follows: $16,035.06 to the plaintiffs and $2,250 to defendant, which was not accepted by him, and with which he was dissatisfied. As shown by plaintiffs the foregoing distribution of the fixed fee was made upon the basis of the estimated construction costs as above set forth (Tr. 93, 95, 96).

 It appears from the evidence that the defendant prepared a rough draft of the contract in dispute and then had his lawyer complete it. Under such circumstances if an ambiguity is found to exist the usual rule would apply. The language in question, presented for the court's interpretation, originated with the defendant and was offered to and accepted by the plaintiffs. The court can not alter the language but must accept it as written. If the defendant did not express himself as he, upon subsequent reflection, thought he should have done, that does not appear to be a matter the court can remedy at this time. The following cases cited by counsel illustrate the rules governing interpretation: Frank v. Butte & Boulder Mining & Lumber Co., 48 Mont. 83, 89, 135 P. 904; Hinerman v. Baldwin, 67 Mont. 417, 433, 215 P. 1103. Both sides knew that the work might be terminated by the government at any time, and that no actual construction might ever take place, and that is how it occurred here; in such circumstances, bearing in mind the language of the contract, it seems to have clearly expressed the intention of the parties that the division of the fee would be made according to the estimated construction costs.

After considering the evidence, briefs and law appearing to be applicable, it does not seem justifiable or reasonable to base the division of the fee upon the expenses incurred which were reimbursable by the government, except as to the principals; furthermore, the evidence is not free from uncertainty as to the amount of the actual expenses incurred. If this theory were to be accepted it would still be necessary to place a reasonable interpretation upon the words in the contract: "Construction cost of the work", which would occasion considerable difficulty even after giving full consideration to the explanation of defendant. There are no questions of fraud, mistake or reformation of contract involved here, and there is nothing novel or concealed or am-

biguous in the language employed. As it appears to the court the estimated construction costs were the only figures before the parties when the partnership agreement was drawn upon which a basis of division was disclosed or could reasonably have been in contemplation. In respect to reasonableness of the division made, it is fairly deducible from the evidence that the plaintiffs diligently devoted their time and efforts to the furtherance of the project while the defendant by reason of other engagements appeared to be unable to devote a comparable amount of time to it, although all three partners had agreed with the government to give their entire time to the project.

Other questions appear in the voluminous transcript, briefs and exhibits which the court has considered, with many of the authorities cited, and now, being duly advised, is of the opinion that the ordinary and concise terms of the contract in issue afford complete disclosure of its meaning, and likewise the intent of the parties in subscribing to it.

From the foregong views it would seem that the plaintiffs should prevail in their interpretation of the contract, and that judgment should be entered accordingly, and it is so ordered.