547 P.2d 26

**John CAMPISANO, Appellant,**

v.

**Franklin M. PHILLIPS, Appellee.**

**No. 2 CA–CIV 2029.**

Court of Appeals of Arizona, Division 2.

March 23, 1976.

Rehearing Denied April 20, 1976.

Review Denied May 25, 1976.

Bolding, Oseran & Zavala by Lynwood J. Evans and Alan L. Stein, Tucson, for appellant.

Hal W. Howard, P.C. by Hal Howard, Tucson, for appellee.

OPINION

KRUCKER, Judge.

Appellant, John Campisano sued appellee, Franklin M. Phillips, for breach of contract. Judgment was rendered in favor of appellee and this appeal followed. We affirm.

On September 15, 1971, appellant entered into a written contract to perform architectural services for Bella Vista Apartments, Inc. The agreement, signed by appellee, both individually and as president of Bella Vista, provided that appellant was to be paid $45,000 plus adjustments for additional services.

Bella Vista paid appellant $11,000 under the September 15, 1971 agreement. Appellant threatened to sue for the balance due, but was informed that by bringing such an action he would impair Bella Vista's chances of obtaining a construction loan. Accordingly, on September 29, 1972, the contract that is the subject of this action was executed.

The contract recited that it was entered into between appellant and Bella Vista. It referred to the 1971 contract and stated that appellant had prepared the plans it had called for. It further provided:

"   .   .   .   all parties hereto desire to establish a complete mode of settlement under the terms of said contract for the payoff of said Architect [appellant]."

It continued:

"IT IS HEREBY AGREED between Architect and Owner [Bella Vista] as follows:

1. Owner agrees to pay Architect the sum of FIFTEEN THOUSAND ($15,-000.00) DOLLARS out of the first draw of the construction or interim loan that Owner may acquire in order to construct said building.

2. Owner shall pay Architect the sum of FIVE THOUSAND ($5,000.00) DOLLARS out of the last draw from said interim or construction loan disbursement

pursuant to the normal draws in the construction industry in Pima County, Arizona now in effect.

3. All parties agree that the total sum payable to Architect by Owner for said plans is TWENTY THOUSAND ($20,-000.00) DOLLARS and the mode of payment as set out in 1 and 2 above shall be the method of payment and the only method of payment for the work completed to date of this Agreement."

The contract contained further covenants that are not material to this action. It concluded:

"7. It is mutually agreed that any and all other modes of payment as may be set out in that certain [1971] Agreement between Owner and Architect or responsible parties for modes of payment thereof, is hereby declared to be waived and the terms of this Agreement shall supersede and control said contract."

The contract was signed at the bottom as follows:

BELLA VISTA APARTMENTS, INC.
an Arizona corporation

/s/ Franklin Phillips

By /s/ Franklin Phillips
   President

Attest:
By /s/ Franklin Phillips
   Secretary

/s/ John Campisano
   JOHN CAMPISANO
   21 West Telles Street
   Tucson, Arizona

---

Neither appellee nor Bella Vista ever received any construction or interim loan draws.

Appellant contends on appeal that he was entitled to be paid within a reasonable time and that the receipt of construction or interim loan draws was not a condition precedent to his right to be paid. The general rule applicable here is stated in 17 Am.Jur. 2d Contracts, § 339:

" . . . a promise to pay out of a particular fund does not create an absolute liability, in the absence of facts or circumstances showing the contrary. Accordingly, where a contract requires payment from a particular fund, it cannot be said that the debt is payable in a reasonable time where the source fails without the fault of the promisor." 17 Am. Jur.2d at 777.

*Accord, Parsons v. Bristol Development Co.,* 62 Cal.2d 861, 44 Cal.Rptr. 767, 402 P.2d 839 (1965).

In this case appellant initially contracted to perform architectural services for a set sum. When full payment was not forthcoming, he threatened to sue. He changed his mind, however, when he learned that by bringing suit he might prevent Bella Vista from obtaining funds with which to pay him. He therefore entered into a new contract with Bella Vista and appellee.

The new contract provided that appellant was to be paid "out of" draws from a construction loan that "Owner may acquire in order to construct" the planned apartment building. The contract further provided that payment out of construction loan draws "shall be the method of payment and the only method of payment for the work

completed to date of this agreement." It finally provided that the new contract superseded the old one.

■ Appellant argues that the contract merely fixed the time when performance was to become due, citing language from *Mignot v. Parkhill*, 237 Or. 450, 391 P.2d 755 (1964). In *Mignot* the contract provided:

"It is fully understood by and between the parties hereto that the Contractor [defendant] shall not be obligated to pay Subcontractor [plaintiff] for any of the work *until such time* as Contractor has himself received the money from Bate Lumber Co." (Emphasis added) 391 P.2d at 757.

The court properly held this was not an agreement to look to a specific fund for payment. It was careful to note, however:

"The contract does not state that the defendant shall not be obligated if the money is not received from Bate Lumber Co. *nor that payment shall be made to plaintiff 'out of' funds received by defendant from Bate Lumber Co. (as in so many cases holding the provision a condition precedent)* but that defendant shall not be obligated *'until such time as'* the money is received by him." (Emphasis added) 391 P.2d at 760.

Here, in contrast to *Mignot,* the contract expressly provided that appellant was to be paid "out of" construction loan draws. We therefore hold that the contract limits appellant to payment out of a particular fund, and that judgment was properly rendered against him when it was shown that the fund did not exist. *See, Frank v. Butte & Boulder Mining & Lumber Co.,* 48 Mont. 83, 135 P. 904 (1913) (repayment to be made "out of the first earnings of [defendant's] business"); *Parsons v. Bristol Development Co., supra.*

Our own research has disclosed the case of *Kirchoff v. Cummard,* 26 Ariz. 512, 226 P. 1092 (1924), which construed a contract

using the words "out of" not to limit payment to a particular fund. The court stated:

". . . the [trial] court evidently concluded that by the term 'provided, said payment be made,' it was the intention of the parties to provide that the commission should be paid within a year, and out of the $7,500 if this installment should be received by appellant, but in case it was not, out of some other fund. There was ample evidence to support this view and full justification for the conclusion drawn therefrom by the court that in the absence from the contract of the word 'exclusively,' or 'only,' or some other expression having the effect of showing that the commission was payable from this fund and no other, the contract merely limited the time beyond which appellee was not required to wait for his commission." 26 Ariz. at 520–21, 226 P. at 1094.

The instant case is in sharp contrast to *Kirchoff*. Here, there was no evidence that the parties intended receipt of construction loan draws merely to mark the time when appellant was to be paid. *See Carrick v. Sturtevant,* 28 Ariz. 5, 234 P. 1080 (1925). When the September, 1972 contract was entered into, appellant had a valid claim for breach of the 1971 contract. He realized, however, that Bella Vista was having financial problems and that if he pressed his claim in court he would preclude any possibility that Bella Vista would perform. These circumstances support the conclusion that he intended to accept a smaller amount in payment and assume the risk that Bella Vista would not obtain construction funds. Further, in *Kirchoff* the court specifically noted the contract contained no expression like "exclusively" or "only" that showed the commission was payable from the particular fund and no other. In contrast, the contract in this case provided unambiguously that payment out of construction loan draws was the "only" method of payment.

**178**

Appellant cites Annot., 148 A.L.R. 1075 in support of his argument that appellee's duty to pay was not contingent on the receipt of construction loan draws. The cases cited therein generally hold:

" . . . where the payment of a debt arising out of a prior contract or arrangement is, by subsequent agreement or instrument executed by the debtor, postponed or made payable upon the happening of some specific contingency wholly or partially within the control of debtor-promisor, the debt becomes payable within a reasonable time after the execution of such subsequent agreement, even though the contingent event has not occurred." 148 A.L.R. at 1077.

Valid though this statement may be as a general rule of construction, the plain language of the contract must control. We agree that where the language of the contract is reasonably subject to different interpretations, the fact that the underlying debt arose from a prior contract supports the view that the parties intended it to be payable within a reasonable time even if the contingency did not occur. However, where the language of the new contract clearly shows an intent that the debt be paid out of a specific fund and not otherwise, the promisee must prove the existence of the fund to recover; and this is true whether or not the debt antedated the new contract. We note that the cases collected in the Annotation uniformly involve contractual language that conditioned payment on the happening of a future event. As far as we can determine, none involved agreements to look to a particular fund.

Appellee argues in support of the judgment that because he was not named as a party in the body of the 1972 contract he was not liable thereon even though he signed it in his individual. capacity. Because of the view we take in the case, we need not consider that argument.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concurring.