939 P.2d 811

**L. HARVEY CONCRETE, INC.,**
**an Arizona corporation,**
**Plaintiff–Appellant,**

v.

**AGRO CONSTRUCTION & SUPPLY COMPANY, dba Agate Construction; Fireman's Fund Insurance Company, a California corporation, Defendants–Appellees.**

**No. 1 CA–CV 96–0238.**

Court of Appeals of Arizona,
Division 1, Department B.

June 19, 1997.

Mark L. Collins, Tucson, for Plaintiff–Appellant.

Jennings & Haug by Jeff R. Wilhelm, Phoenix, for Defendants–Appellees.

## OPINION

PATTERSON, Judge.

In this appeal we must determine whether a particular "pay-when-paid" provision in an agreement between a contractor and subcontractor is effective as a condition precedent to excuse the contractor from paying the subcontractor where a corresponding payment was not received by the contractor from the owner. The trial court granted summary judgment for the contractor, concluding as a matter of law that the language created a condition precedent and that the condition had not been satisfied. For the reasons explained herein, we agree with the trial court that a condition precedent was created by the contract. However, we reverse and remand because a question of material fact remains as to whether the condition is excused.

## FACTS AND PROCEDURAL HISTORY

Agro Construction & Supply Company, dba Agate Construction ("Agate"), entered into a written prime contract with the Arizona Department of Transportation ("ADOT") for the construction of an equipment storage building at ADOT's Nogales maintenance yard. Agate, in turn, entered into a written subcontract with L. Harvey Concrete, Inc. ("Harvey"), wherein Harvey agreed to be bound by the terms of the prime contract and to perform certain excavation work on the project in exchange for specific compensation for each unit of material removed. In particular, Harvey was to perform the necessary earthwork, including excavating "existing formation," more commonly referred to as "rock," to be paid at the rate of $25 per cubic yard. It had been estimated in the prime contract that the quantity of rock to be removed would be 500 cubic yards for a total payment of $12,500. In order to determine the actual quantity of rock removed, whether more or less than the estimated amount, Harvey was obligated to hire a licensed land surveyor. As general contractor, Agate was to submit to the state

any claims for payment on Harvey's behalf. Upon receipt of payment from the state, Agate was to pay Harvey, with Agate receiving a ten per cent markup on Harvey's work.

After Harvey had performed the rock excavation work, it submitted a pay request to Agate indicating that it had removed more than three times the estimated 500 cubic yards of rock for a total of 1,531.25 cubic yards. Agate submitted Harvey's pay applications to ADOT for payment, but ADOT refused to pay for any more rock removal than the estimated 500 cubic yards at $12,500. ADOT questioned whether Harvey had actually removed 1,531.25 cubic yards of rock, and whether it had been necessary to remove that amount of rock to accomplish the project. Agate resubmitted the pay requests several times, but ADOT was never satisfied with the documentation Harvey provided to support its request for $25,781.25.

Harvey then turned to Agate for payment of the work it had performed. When Agate refused to pay the additional amount, Harvey filed suit against both Agate and Fireman's Fund Insurance Company, which had issued a payment bond for the project that named Agate as principal.

Agate and Fireman's Fund (referred to collectively as "Agate") moved for summary judgment, arguing that payment was excused due to a pay-when-paid provision in the subcontract. The provision in question contained in paragraph 15.3 of the subcontract stated:

> Progress payments and final payment. Notwithstanding anything to the contrary in the preceding paragraphs of this agreement, subcontractor agrees as a condition precedent to payment, of either progress or final payment, that the owner shall have first paid the payment applied for to the contractor, and that payment for either progress payments or final payment is not due and owing to the subcontractor as provided for herein until the owner has made such payment to the contractor. The subcontractor recognizes that the source of funding for this subcontract agreement are [sic] the progress and final payments that are to be made by the owner to contractor.

Agate argued that this provision created a condition precedent that relieved it from paying Harvey when the condition did not occur. In opposition to this argument, Harvey argued that the condition precedent is not sufficient to excuse payment under Arizona law.

The trial court agreed with Agate, concluding as a matter of law that the contract language created a condition precedent to Agate's obligation to pay Harvey and that the condition was not satisfied. The court thereupon granted Agate's motion for summary judgment. Harvey appealed to this court, arguing that the condition precedent is not enforceable and that there are genuine issues of material fact yet to be determined. We have jurisdiction pursuant to Ariz.Rev. Stat. Ann. ("A.R.S.") sections 12–2101(B) (1994) and 12–120.21(A)(1) (1992).

## STANDARD OF REVIEW

On appeal from summary judgment, we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Hawkins v. Department of Economic Sec.*, 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App.1995); *Orme School v. Reeves*, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990). The interpretation of a contract is a question of law. *Arizona Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App.1993). We view the evidence in the light most favorable to the party against whom summary judgment was entered, and give that party the benefit of all favorable inferences fairly arising from the evidence. *Angus Medical Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 162, 840 P.2d 1024, 1027 (App. 1992).

## DISCUSSION

■ In support of the trial court's conclusion, Agate argues that Arizona law permits an absolute shifting of the risk of non-payment through a pay-when-paid provision that clearly and unambiguously establishes an intent to create a condition precedent. It argues that this objective was accomplished here through the use of language expressly stating that payment to the contractor by the

owner was a "condition precedent" to the contractor's obligation to pay the subcontractor. Harvey argues in opposition that no condition precedent to recovery is created under Arizona law, regardless of the contract's use of the words "condition precedent" unless the contract also contains specific terms expressly limiting payment to a particular fund of money and that particular fund alone.

In the trial court and in the opening and answering briefs, both parties rely on *Watson Constr. Co. v. Reppel Steel & Supply Co., Inc.*, 123 Ariz. 138, 598 P.2d 116 (App.1979), a case decided by this court, as supporting their respective positions. We agree that reasonable support for both of these positions can be found in *Watson*, depending on how one interprets that case.

In *Watson*, the pay-when-paid provision of the contract merely stated that "[a]t all times subcontractor shall be paid to the extent that the contractor has been paid on his account." *Id.* at 140, 598 P.2d at 118. The parties in that case disputed whether such language created "a condition precedent conditioning the general contractor's obligations so as to limit [the subcontractor's] right of recovery to a fund created by the owner's payment to the general contractor" or whether the agreement created "fixed obligations with the quoted provisions merely providing a convenient or normal time for payment." *Id.*

We began our analysis in *Watson* by acknowledging the general rule that conditions precedent are not favored in the law and that courts are not inclined to construe a contractual provision as a condition precedent unless such construction is plainly and unambiguously required by the language of the contract. *Id.* Next, we quoted language from *Thos. J. Dyer Co. v. Bishop Int'l Eng'g Co.*, 303 F.2d 655 (6th Cir.1962), that we had previously quoted in the case of *Darrell T. Stuart Contractor of Arizona v. J.A. Bridges & Rust–Proofing, Inc.*, 2 Ariz.App. 63, 65, 406 P.2d 413, 415 (1965), which concluded as follows:

[I]n order to transfer [the] normal credit risk incurred by the general contractor from the general contractor to the subcontractor, *the contract* between the general contractor and subcontractor *should contain an express condition clearly showing that to be the intention of the parties.* *Watson*, 123 Ariz. at 141, 598 P.2d at 119 (emphasis first added in *Darrell T. Stuart* case).

In *Watson*, we then cited the case of *Campisano v. Phillips*, 26 Ariz.App. 174, 547 P.2d 26 (1976), as an example of a contract that clearly and unambiguously showed an intent to create a condition precedent. 123 Ariz. at 141, 598 P.2d at 119. We noted that in that case, the relevant provision stated that payment to an architect was to be made from money obtained from a construction loan and that this particular method of payment would be the only method of payment. *Id.* We continued by observing that the court in *Campisano* found that a condition precedent to liability had been established in that instance in which the use of expressions such as "exclusively" or "only" demonstrated "not only an intent that payment was to be made from a specified fund, but also that payment was to be made from that particular fund *and no other.*" *Id.* at 142, 598 P.2d at 120 (emphasis in original). We then determined that the language of the contract in *Watson* did not limit the subcontractor's right to payment to the fund created by the owner's payments to the contractor and, therefore, no condition precedent was created. *Id.*

We continued to follow that reasoning in the more recent case of *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 733 P.2d 652 (App.1986). There we were asked to decide whether a condition precedent was created by language in a pay-when-paid clause which stated that "the recovery by Subcontractor for [additional] work shall be conditioned upon a prior recovery therefor by Contractor from the Owner." 152 Ariz. at 469, 733 P.2d at 666. The relevant clause in *Pioneer Roofing* expressly provided that the duty to perform under the contract was conditioned upon a particular event, which we find no different from saying that the happening of the event was a "condition precedent" to the duty to perform. However, that clause failed to identify clearly the fund that was to be the source of payments to the subcontractor. We therefore concluded that,

as in *Watson,* no condition precedent limiting recovery to a specific fund was created in the absence of proof of an intent that payment was to be made exclusively from the specified fund and no other. *Id.* at 470, 733 P.2d at 667.

█ *Campisano, Watson* and *Pioneer Roofing* each illustrate in different settings the general rule that, in order to create a condition precedent limiting recovery to a specific fund, there must be contractual language demonstrating the parties' unequivocal intent that the obligation is to be paid out of that fund and not otherwise. In *Campisano,* we found language demonstrating such intent. In *Watson* and *Pioneer Roofing,* we did not. Relying on *Watson* and *Pioneer Roofing,* Harvey argues that no condition precedent was created here because its contract with Agate does not include specific expressions such as "exclusively" or "only" which would evidence an intent that payment received from the owner will be the only source of Agate's payment to Harvey.

It would be overly technical and ill advised as a matter of general contract law to insist that no condition precedent is created unless the contract specifically states that payment will come "exclusively" or "only" from a specified fund. While such terms may assist, as they did in *Campisano,* in demonstrating the necessary intent to create a condition precedent limiting recovery to a specific fund, the use of such terms is not the sole method of expressing the intent necessary to create such a condition. Nor do our prior cases require the use of such "magic words." As noted above, these cases simply require that, in order to create a condition precedent limiting recovery to a specific fund, there must be contractual language demonstrating the parties' unequivocal intent that the obligation be paid out of that fund and not otherwise.

Harvey argues there is no such language here. We disagree. The language used here is much stronger than that used in *Watson* or *Pioneer Roofing* in showing an intent to limit recovery to the payments received from the owner. The contract between Agate and Harvey expressly states that receipt of payment from the owner is a "condition precedent" to recovery. It further states that

"payment for either progress payments or final payment is *not due and owing* ... until the owner has made such payment to the contractor." Finally, the contract identifies as the source of funding for the subcontract the "progress and final payments that are to be made by the owner to the contractor." We find the language here sufficiently reflects the concept of exclusivity necessary to demonstrate that the parties clearly and unequivocally intended to create a condition precedent shifting the risk of nonpayment from Agate to Harvey. Thus, the condition precedent is valid and enforceable.

However, we question whether the transfer of risk to Harvey is, as Agate asserts, absolute. Harvey agreed to accept the normal credit risk associated with an owner's non-payment (i.e., insolvency), but Harvey did not necessarily accept the risk of non-payment under all circumstances. Indeed, as we discuss below, there are certain circumstances under which courts excuse rather than enforce conditions precedent. This is the essence of Harvey's next argument: even if the condition precedent here is enforceable, the condition should be excused if ADOT's refusal to pay was based upon a gross mistake of fact regarding the requirements of the contract. Harvey claims that ADOT made such a gross mistake of fact.

█ A condition precedent to recovery will be excused in the presence of gross mistake, fraud or error amounting to a failure to exercise honest judgment. *New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Ass'n,* 12 Ariz.App. 13, 19, 467 P.2d 88, 94 (1970). Where there is doubt concerning the nature of the event that is a condition of the obligor's duty, courts generally prefer an interpretation that will avoid the risk of forfeiture—particularly where that risk is substantial, as in the case of a judgment that is based on a gross mistake of fact. *See* RESTATEMENT (SECOND) OF CONTRACTS § 227 cmt. c (1981).

The event in question is ADOT's refusal to pay for work Harvey performed that may have been beyond the quantity of work estimated in the contract. Harvey in essence claims that ADOT made a gross mistake of

fact regarding the requirements of the contract by making demands exceeding the terms of both the prime contract and the subcontract, and by refusing to pay when it determined that Harvey had not met those demands.

The record shows that ADOT was unclear about how much rock Harvey removed from the site, how Harvey determined the quantity of rock it had removed, and how that quantity related to the construction plan. ADOT expected Agate to estimate the quantity of rock removed by tabulating the trucks leaving the work site. Yet Harvey and Agate both agree there was no contractual requirement to tabulate the trucks. ADOT also demanded surveys showing the excavation site's cross section, width, depth and angle both prior to and immediately following the rock removal. Yet, Harvey claims, despite the fact that the contract only required it to "[e]mploy a licensed land surveyor to survey the excavation to determine quantities of material removed"—which Harvey did— ADOT repeatedly demanded far more specificity and detail than required under the contract.

■ Resolution of this issue is in part a matter of contract interpretation. However, the record on appeal does not include the entire contract. In addition, there appear to be facts in dispute regarding the nature of ADOT's demands and Harvey's attempts to meet those demands. We are not a trier of fact and are therefore not in a position to reach a conclusion regarding Harvey's claim. We can only conclude that Harvey has raised a triable issue of fact and is entitled to continue its litigation in order to develop the record toward answering these and related issues.

■ To prevail, Harvey must first establish that ADOT made a gross mistake of fact

regarding the requirements of the contract, and that ADOT's mistake led to its refusal to pay. In order to do so, Harvey must present evidence to a trier of fact. If Harvey can establish these circumstances, the condition precedent will be excused and this particular impediment to Agate's liability will be removed.

Accordingly, we reverse the summary judgment in favor of Agate. We also vacate the award of attorneys' fees to Agate in the amount of $20,000 because neither party has yet prevailed on the contract claim. *See* A.R.S. § 12–341.01(A) (1992). Agate also requested attorneys' fees for defense of this appeal, but is not the prevailing party. We therefore decline that request. *See id.;* ARIZ. R. CIV.APP. P. 21(c).

## CONCLUSION

For the reasons set forth above, we find that the language of the pay-when-paid clause in the contract here sufficed to create an enforceable condition precedent to Agate's liability to Harvey. However, we also find that Harvey's claim that ADOT made a gross mistake of fact raises a genuine issue of material fact that may excuse the condition precedent, thus precluding summary judgment. We therefore reverse and remand for further proceedings consistent with this opinion. We also vacate the trial court's award of attorneys' fees to Agate.

GERBER and LANKFORD, JJ., concur.