NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHERYL MARIE MCCOY, et al., *Plaintiffs/Appellants*,

*v.*

KEN HASSEN, et al., *Defendants/Appellees*.

CHERYL MARIE MCCOY, et al., *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

HENRY KARTAGENER and CLAIRE KARTAGENER,
*Defendants/Appellees/Cross-Appellants*.

1 CA-CV 21-0524
FILED 8-30-2022

Appeal from the Superior Court in Maricopa County
No. CV2020-010557
The Honorable Joan M. Sinclair, Judge
The Honorable Andrew J. Russell, Judge

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**

COUNSEL

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Bradley R. Jardine, Michael Warzynski
*Co-Counsel for Plaintiffs/Appellants/Cross-Appellees Cheryl Marie McCoy,*
*Marcianne Johnson, Melissa Wilson (Scovel)*

Elardo, Bragg, Rossi & Palumbo, P.C., Phoenix
By Venessa J. Bragg
*Co-Counsel for Plaintiffs/Appellants/Cross-Appellees Cheryl Marie McCoy, Marcianne Johnson, Melissa Wilson (Scovel)*

Goering, Roberts, Rubin, Brogna, Enos & Treadwell-Ruben, P.C., Tucson
By Andrew T. Apodaca, Christopher L. Enos
*Counsel for Defendants/Appellees Sharon Maiden, Wilbur Maiden*

Jaburg & Wilk, P.C., Phoenix,
By Maria Crimi Speth, Aaron K. Haar
*Counsel for Defendants/Appellees Samantha Kelley, William Suttell*

Portmeirion Law Offices, PLLC, Phoenix
By Daniel Torrens
*Co-Counsel for Defendant/Appellee Ken Hassen*

Hill, Hall & DeCiancio, PLC, Phoenix
By Christopher Robbins, R. Corey Hill, Ginette M. Hill
*Co-Counsel for Defendant/Appellee Ken Hassen*

Jones, Skelton & Hochuli P.L.C., Phoenix
By Michael E. Hensley, John D. Lierman, Elizabeth B. N. Garcia
*Counsel for Defendants/Appellees/Cross-Appellants Henry Kartagener, Claire Kartagener*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Peter B. Swann and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1        Cheryl Marie McCoy, Marcianne Johnson, and Melissa Wilson (Scovel) ("Wilson") (collectively, "Plaintiffs") filed a complaint against a host of defendants alleging defamation, false light invasion of privacy, intentional infliction of emotional distress, a violation of the Arizona Fair Housing Act,[1] and private nuisance.  The superior court

---

[1]        *See* Ariz. Rev. Stat. ("A.R.S.") §§ 41-1491 to -1491.37.

2

granted several defendants' motions to dismiss all counts, and entered judgments under Arizona Rule of Civil Procedure ("Rule") 54(b).

**¶2** In this appeal, Plaintiffs challenge only the dismissal of their claims for defamation and false light invasion of privacy against the marital communities of Samantha Kelley (and William Suttell), Henry (and Claire) Kartagener, Sharon (and Wilbur) Maiden, and Ken Hassen (collectively, "Defendants").[2] The Kartageners have filed a cross-appeal, challenging the superior court's denial of their request for attorneys' fees, expenses, and sanctions. For the following reasons, we affirm the judgments dismissing Plaintiffs' complaint as to Defendants, but we reverse the court's denial of the Kartageners' request for attorneys' fees, expenses, and sanctions and remand for further consideration of that request.

## FACTS AND PROCEDURAL HISTORY

**¶3** The parties reside in a community known as Val Vista Lakes, located in Gilbert, Arizona. Val Vista Lakes residents are members of the Val Vista Lakes Master-Planned Community Association ("the Association"), which is governed by the Val Vista Lakes Community Association Board ("the Board"). All three Plaintiffs have served on the Board and held the role of President of the Board.

**¶4** Before November 2019, the Board included eventual Plaintiffs Wilson—who was at that time the Board's President—and Johnson; Todd McCoy, the husband of eventual Plaintiff and former Board President Cheryl McCoy; and eventual defendants James Rosebrough, Hassen, and Suttell. In November 2019, a regularly scheduled Board election was held, after which non-parties Dustin Snow and Dean Sanders joined the Board, Hassen was no longer on the Board, and Johnson became Board President.

**¶5** According to Plaintiffs' complaint, before and after the November 2019 election, a group of persons engaged in an on-line "hate and disinformation campaign" against Plaintiffs. That campaign resulted in a June 2020 recall election, pursuant to which Johnson and Wilson were voted off the Board, and continued for a time after the recall election.

---

[2] Because Plaintiffs do not raise or develop any argument on appeal challenging the dismissal of their claims for intentional infliction of emotional distress, a violation of the Arizona Fair Housing Act, and private nuisance, they have waived any challenge to the dismissal of these claims as to Defendants. *See Sholes v. Fernando*, 228 Ariz. 455, 461, ¶ 16 (App. 2011); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007).

**¶6**     In August 2020, Plaintiffs filed their complaint, which largely consisted of their characterizations and summary descriptions of statements allegedly made, and actions allegedly undertaken, by a multitude of named defendants, but only included portions of a few actual statements.  Most of the allegedly defamatory statements had been published on social websites.  Beginning in November 2020, various defendants filed Rule 12(b)(6) motions to dismiss, including Kelley, the Kartageners, and the Maidens, who joined motions to dismiss filed by five other defendants, including Kelley and the Kartageners.  Defendants all attached the full statements in their motions to dismiss instead of relying on Plaintiffs' statement summaries contained in the complaint.

**¶7**     After responsive briefing, the superior court held oral argument in February 2021 on the motions to dismiss.  Plaintiffs conceded the court could dismiss without prejudice their claim for a Arizona Fair Housing Act violation, and the court otherwise took the various motions to dismiss under advisement.

**¶8**     In April 2021, the court issued a minute entry granting, as relevant here, motions to dismiss in favor of Kelley, the Kartageners, and the Maidens.  The court's ruling was based in part on its conclusion that Plaintiffs were "limited [purpose] public figures," which required Plaintiffs to "prove by clear and convincing evidence that Defendants' statements were false, and that Defendants either had actual knowledge of that falsity, or that Defendants acted 'with reckless disregard for the truth.'"  The court also held in part that Henry Kartagener and Sharon Maiden had made opinion statements, not actionable as defamation, and that Plaintiffs had failed to state a false light invasion of privacy claim because, as limited purpose public figures, Plaintiffs could not maintain such a claim based on statements related to their public life or duties.

**¶9**     Subsequently, Hassen also filed a Rule 12(b)(6) motion to dismiss,[3] and the Kartageners moved for an award of attorneys' fees, expenses, and sanctions against Plaintiffs.  The court granted Hassen's

---

[3]     Counsel for Hassen appeared at the February 2021 oral argument, and in its April 2021 minute entry, the court held that Hassen had only expressed opinions, not actionable statements.  According to Plaintiffs, Hassen's motion to dismiss was simply a formal request for judgment on a specific ruling already made as to him, and Plaintiffs therefore did not object to the motion.

motion, denied the Kartageners' motion, and entered separate Rule 54(b) judgments in favor of each of the Defendants.[4]

¶10 Plaintiffs timely appealed the separate judgments entered in favor of Defendants, and the Kartageners filed a timely notice of cross-appeal, challenging the denial of their request for attorneys' fees, expenses, and sanctions. We have jurisdiction over this appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

### I.     Standard of Review for a Rule 12(b)(6) Motion

¶11 We review *de novo* the superior court's ruling on a Rule 12(b)(6) motion. *Coleman v. City of Mesa*, 230 Ariz. 352, 355-56, ¶¶ 7-8 (2012). A motion to dismiss should be granted if the complaint fails to state a claim upon which relief can be granted. Ariz. R. Civ. P. 12(b)(6); *see also Elm Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 289, ¶ 5 (App. 2010) (stating that a motion to dismiss should only be granted if the plaintiffs are not "entitled to relief under any facts susceptible of proof in the statement of the claim" (citation omitted)).

¶12 In deciding a motion to dismiss under Rule 12(b)(6), courts "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008) (citations omitted). However, courts should not speculate about facts that might entitle plaintiffs to relief, *see id.* at 420, ¶ 14, nor should courts "accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts," *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005) (citations omitted).

### II.     Propriety of Utilizing Rule 12(b)(6)

¶13 Plaintiffs argue the superior court erred in utilizing Rule 12(b)(6)—as opposed to, for example, summary judgment—in dismissing

---

[4]     After the Rule 54(b) judgments were filed, Plaintiffs filed an amended complaint, clarifying allegations as to another defendant. That amended complaint has no effect on the issues raised or our analysis in this appeal.

their claims. They question the court's propriety in making determinations at the motion to dismiss stage of a defamation case and whether Defendants' motions should have been converted into motions for summary judgment. Their argument is unavailing, given that this court has previously decided similar claims at the Rule 12(b)(6) stage. *See Reynolds v. Reynolds*, 231 Ariz. 313, 315, ¶¶ 1-2 (App. 2013) (affirming dismissal of a complaint for defamation and false light invasion of privacy at the motion to dismiss stage); *Sobol v. Marsh*, 212 Ariz. 301, 305, ¶ 14 (App. 2006) (defamation); *AMCOR Inv. Corp. v. Cox Ariz. Publ'ns Inc.*, 158 Ariz. 566, 568 (App. 1988) (corporate defamation and commercial disparagement); *see also Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 515, 521, ¶¶ 6, 34 (2005) (granting special action relief and dismissing intentional infliction of emotional distress claim on First Amendment grounds). Moreover, the standard for evaluating Rule 12(b)(6) motions supports the superior court utilizing that rule in this case.

¶14 When adjudicating a Rule 12(b)(6) motion, "Arizona courts look only to the pleading itself." *Cullen*, 218 Ariz. at 419, ¶ 7. If matters outside the pleading are necessarily considered, we treat the motion as one for summary judgment. *Coleman*, 230 Ariz. at 356, ¶ 9. However, "[a] complaint's exhibits, or public records regarding matters referenced in a complaint, are not 'outside the pleading,' and courts may consider such documents without converting a Rule 12(b)(6) motion into a summary judgment motion." *Id.* (citing *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, 63-64, ¶¶ 10, 13 (App. 2010)); *accord Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, 601, ¶ 10 (App. 2016).

¶15 Another exception to the conversion rule includes "matters that, although not appended to the complaint, are central to the complaint." *Strategic Dev.*, 224 Ariz. at 64, ¶ 14 (citations omitted); *accord Elm Ret. Ctr.*, 226 Ariz. at 289, ¶ 7; *but see Workman*, 240 Ariz. at 602, ¶ 13 (calling this exception into doubt). In this case, that would include considering the actual and full allegedly defamatory statements included in Defendants' motions to dismiss, evaluated in their "content and context." *Yetman v. English*, 168 Ariz. 71, 76 (1991). On this record, we find no error in the court's utilizating Rule 12(b)(6).[5]

---

[5] The superior court did not indicate whether it relied on the complete statements provided by Defendants in their motions to dismiss instead of Plaintiffs' statement summaries contained in the complaint. Thus, even if the full statements were not central to the complaint—which they are—the

### III. Limited Purpose Public Figures

¶16    Plaintiffs also argue the superior court erred in concluding they were limited purpose public figures, thereby limiting their ability to bring and maintain defamation and false light invasion of privacy claims. A court may decide as a matter of law whether a person is a public figure. *See Rosenblatt v. Baer*, 383 U.S. 75, 88 (1966).

¶17    Generally, a private person claiming defamation must prove a defendant published a false and defamatory statement concerning the person and (1) knew the statement was false and defamed the other, (2) acted in reckless disregard of these matters, or (3) negligently failed to ascertain them. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315 (1977) (citing Restatement (Second) of Torts § 580B (1975)); *accord Reynolds*, 231 Ariz. at 317, ¶ 8 (citations omitted). However, a plaintiff who is either a public official or a public figure must prove by clear and convincing evidence the allegedly defamatory statements were made with "actual malice" — that is, with knowledge the statements were false or with reckless disregard of their falsity. *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); *Selby v. Savard*, 134 Ariz. 222, 225 (1982) (citing *Sullivan*, 376 U.S. at 279-80; *Gertz*, 418 U.S. at 342); *see also Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 487 (1986) ("The disregard must be more than 'reckless' — *conscious* disregard would be a better description of the test."). Thus, the law generally provides private persons with greater protection from defamation than it does for more public persons.

¶18    "[P]ublic figures may reach that status because of their position, their 'purposeful activity' in 'thrusting' themselves into matters of public controversy or their close involvement with the resolution of matters of public concern." *Dombey*, 150 Ariz. at 483 (citing *Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc.*, 130 Ariz. 523, 527 (1981)). Some persons "may achieve such pervasive fame or notoriety that [they] become[] a public figure for all purposes and in all contexts." *Gertz*, 418 U.S. at 351. Other persons, such as those active in community and professional affairs, may voluntarily inject themselves or be drawn into a particular public controversy and thereby become a public figure for a limited range of issues, especially when we "reduce the public-figure question to a more meaningful context by looking to the nature and extent

---

motions to dismiss need not have been converted. *See Belen Loan Invs., LLC v. Bradley*, 231 Ariz. 448, 452, ¶ 7 (App. 2012).

of an individual's participation in the particular controversy giving rise to the defamation." *Id.* at 351-52.

**¶19** Arizona long ago determined that candidates running for a public office waive some rights as a private citizen in terms of defamation claims. *See Connor v. Timothy*, 43 Ariz. 517, 523 (1934) ("It is true that statements respecting political affairs, public officers, and candidates for office are in a measure privileged, for one who seeks public office waives his right of privacy, so that he cannot object to any [pr]oper investigation into the conduct of his private life which will throw light on the question as to whether the public, which bestows upon him the office which he seeks, shall elect him or not, and a charge made in good faith against such candi[d]ate which affects his fitness for the office which he seeks is privileged, even though untrue.").

**¶20** Several courts in other jurisdictions have similarly held that homeowners' association board members or managers are limited purpose public figures. *See, e.g., Cabrera v. Alam*, 129 Cal. Rptr. 3d 74, 78 (Cal. Ct. App. 2011); *Metge v. Cent. Neighborhood Improvement Ass'n*, 649 N.W.2d 488, 496 (Minn. Ct. App. 2002); *Gulrajaney v. Petricha*, 885 A.2d 496, 504-05 (N.J. Super. Ct. App. Div. 2005); *Verna v. Links at Valleybrook Neighborhood Ass'n*, 852 A.2d 202, 214 (N.J. Super. Ct. App. Div. 2004); *Martin v. Comm. for Honesty & Justice at Star Valley Ranch*, 101 P.3d 123, 125 (Wyo. 2004).

**¶21** In this case, the superior court, relying in part on *Verna*, concluded that a candidate for election to an HOA board of directors "should be deemed a limited purpose public figure." 852 A.2d at 214. In so deciding, the *Verna* court noted that HOA boards "perform[] many quasi-municipal functions in order to provide the [home]owners with what they sought upon purchasing their [properties]—a stable, planned environment." *Id.*

**¶22** We agree with the superior court that, under the facts presented here, Plaintiffs are "limited purpose public figures" by reason of their individual decisions to inject themselves into the public controversies that ultimately gave rise to the alleged defamation. Plaintiffs argue they merely served at some time on the Board, but they did much more than that in this case. Plaintiffs not only ran in elections for and served on the Board, but each sought and ultimately achieved the position of Board President, overseeing an extremely large HOA, encompassing a multitude of

residents.[6] McCoy previously held such a position (and at the time of the complaint, her husband continued to serve on the Board), and Johnson and Wilson held that position during and/or around the times when Defendants made the allegedly defamatory statements. Accordingly, the heightened scrutiny relevant to statements made about persons who are limited purpose public figures applies here, even to statements made shortly after the contentious June 2020 recall election.[7]

¶23 Plaintiffs raise several arguments as to why they should not be considered limited purpose public figures, but we find each argument unavailing. Plaintiffs argue they cannot be considered limited purpose public figures because the Board's activities are not of general public concern, and they frame the relevant inquiry as examining whether the subject matter is newsworthy or of interest to the public at large. However, "[t]o deserve First Amendment protection, it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested." *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997) (citation omitted); *see also Rodriguez v. Fox News Network, L.L.C.*, 238 Ariz. 36, 40, ¶ 11 (App. 2015) ("Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community . . . ." (citations and internal quotations omitted)); *Damon v. Ocean Hills J'ism Club*, 102 Cal. Rptr. 2d 205, 213 (Cal. Ct. App. 2000) (holding that discussions about HOA matters addressed matters of public concern, in part because "they concerned 'issues of critical importance to a large segment of our local population'"). Here, the Board's composition is a matter of public concern to, at minimum, the many Val Vista Lakes residents who are Association members and governed by the Board.

¶24 Plaintiffs also argue they engaged in no purposeful activity thrusting them into a public controversy. "An individual may become a public figure if [s]he 'thrusts [her]self or [her] views into public controversy to influence others.'" *Dombey*, 150 Ariz. at 483 (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)). "Whatever requirement there might be

---

[6]     Plaintiffs state there are 2280 members of the Association.

[7]     Plaintiffs argue the superior court's decision effectively results in them being full "public figures" and not "limited purpose public figures" because the court did not specify the duration or scope of its public figure declaration as to them. That argument is of no moment here because the complaint indicates that all the allegedly defamatory statements occurred close in time and/or were related to the 2019 and 2020 Board elections.

to 'thrust' oneself into a public controversy was satisfied by [Plaintiffs'] voluntary participation in activity calculated to lead to public scrutiny." *Id.* at 485. Moreover, a fair reading of the complaint makes clear the fall of 2019 was not the genesis of Plaintiffs' status as limited purpose public figures; rather, the facts and statements provided support the conclusion that they and the Board had been mired in public conflict for some time.[8]

**¶25** We also find unhelpful Plaintiffs' other arguments, including their reliance on Arizona's Planned Communities Act, *see* A.R.S. §§ 33-1801 to -1818, and their argument that because the Association's Board and members are subject to a private contract, the Board should not be viewed as acting as a "quasi-governmental" agency. Additionally, we reject Plaintiffs' argument that the superior court's ruling means that any person who sits on any elected private board becomes a limited purpose public figure. Purely private businesses are different from HOA boards, such as the Board here, in that the legislature has, in part, extended First Amendment-type protections—via A.R.S. §§ 33-1804 and 33-1808—to HOA members. Thus, Plaintiffs' stated fear of rampant, uncontrolled defamation for other private governing boards appears unfounded and, in any event, is not an issue directly before us. The superior court correctly concluded that Plaintiffs are limited purpose public figures.[9]

---

[8] Because it is not necessary to our decision, we need not decide (1) whether the superior court could also have taken judicial notice of Maricopa County Superior Court Case No. CV2015-090368 in deciding the motions to dismiss, and (2) whether the Maidens' equitable estoppel argument regarding this issue constitutes an improper cross-appeal of a previously denied motion for judicial estoppel. *See generally Reidy v. O'Malley Lumber Co.*, 92 Ariz. 130, 132 (1962) ("A court may take judicial notice of the record in another action tried in the same court." (citations omitted)); Ariz. R. Evid. 201(c). In Case No. CV2015-090368, Plaintiffs McCoy and Johnson, but not Wilson, were named defendants in an earlier defamation lawsuit and successfully defended on the basis that the plaintiff, as a Board member, was a public figure.

[9] Because we agree with the superior court that Plaintiffs are limited purpose public *figures*, we need not decide whether they might be characterized as public *officials*, *see Dombey*, 150 Ariz. at 485 n.3, and in this context, that appears to be a distinction without a difference, *see id.* at 480 (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 148-51 (1967) (finding no rational distinction between the concept of a "public official" and private

IV.     *Plaintiffs' Claims for False Light Invasion of Privacy*

¶26     Plaintiffs concede that if they qualify as limited purpose public figures, then the superior court correctly dismissed their false light invasion of privacy claim against each Defendant.  A claim for false light invasion of privacy must be dismissed if a plaintiff "is a public official *and* the publication relates to performance of his or her public life or duties." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 343 (1989) ("We have specifically held that the right of privacy does not exist "where the plaintiff has become a public character." (quoting *Reed v. Real Detective Publ'g Co.*, 63 Ariz. 294, 304 (1945))).  Given that Plaintiffs qualify as limited purpose public figures and their claims relate to statements about their performance as Board members, we accept Plaintiffs' concession and waiver of any further argument as related to their false light invasion of privacy claims.

V.      *Plaintiffs' Defamation Claims*

¶27     Plaintiffs nevertheless argue the superior court erred in dismissing their defamation claims against Defendants.  They maintain that the court erred in concluding that Defendants merely expressed non-actionable opinions and did not make false factual statements actionable as defamation.  *See generally id.* at 341 (stating that, to qualify as defamation under Arizona common law, "a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation").

¶28     We review Plaintiffs' argument *de novo.  See Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 106, ¶ 22 (App. 2017) (citing *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180 (App. 1997)).

¶29     "The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech." *Damon*, 102 Cal. Rptr. 2d at 213 (citations and internal quotations omitted).  Thus, the law vigorously protects various types of political speech, even that which may be deemed to be offensive.  *See, e.g., Texas v. Johnson*, 491 U.S. 397 (1989) (flag burning); *Nat'l Socialist Party of Am. v. Skokie,* 432 U.S. 43 (1977) (Nazi march through Jewish neighborhood); *Cohen v. California*, 403 U.S. 15 (1971) (profane antiwar slogan).  "Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards

---

citizens who are "public figures")).  In any event, Plaintiffs have waived any argument in this regard.

afforded by the First Amendment." *Damon*, 102 Cal. Rptr. 2d at 213 (citations and internal quotations omitted).

¶**30**        In Arizona, "the First Amendment . . . limits the scope of state defamation law when applied to public figures and matters of public concern." *Rogers v. Mroz*, 252 Ariz. 335, 337, ¶ 2 (2022) (citing *Dombey*, 150 Ariz. at 481). Toward that end, "courts must ensure that only truly meritorious defamation lawsuits are allowed to proceed." *Id.* at 338, ¶ 4. Courts serve this gatekeeper function because "the expense of defending a meritless defamation case could have a chilling effect on First Amendment rights." *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 357 (1991) (citations omitted); *accord BLK III, LLC v. Skelton*, 252 Ariz. 583, 587-88, ¶ 11 (App. 2022).

¶**31**        As we have recognized, *see supra* ¶ 17, a plaintiff who is a public official or figure claiming defamation must prove not only that a defendant published a false and defamatory statement concerning the plaintiff, but did so with actual malice, i.e., with knowledge the statements were false or with what amounts to conscious disregard of their falsity. *See Dombey*, 150 Ariz. at 487; *Sullivan*, 376 U.S. at 279-80; *Gertz*, 418 U.S. at 342.

¶**32**        Here, the claims and alleged statements pled in Plaintiffs' complaint are insufficient to meet the high scienter requirement placed on defamation claims by public officials or public figures under *Dombey* and *Sullivan* and to overcome Defendants' First Amendment rights to publicly discuss the Board elections and the qualifications of those seeking, holding, or otherwise intertwined in positions of public trust within the Association. Although Arizona is a notice-pleading state, *see* Ariz. R. Civ. P. 8(a); *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6 (2008), "'conclusory statements are insufficient to state a claim upon which relief can be granted,' and 'legal conclusions, without any supporting factual allegations,' fail to satisfy Arizona's notice pleading standard. This is especially true in a defamation action . . . ." *BLK III*, 252 Ariz. at 588-89, ¶¶ 15, 17 (affirming the grant of a motion to dismiss and rejecting the plaintiff's claim that the defendants' statements were defamatory because the plaintiff offered "broad summaries" of the defendants' alleged statements that "lack[ed] the requisite specificity to allow the court to determine that they contained objectively verifiable statements of fact" (quoting *Cullen*, 218 Ariz. at 419, ¶ 7)). Plaintiffs' complaint, which largely contains their characterizations of Defendants' allegedly defamatory statements and provides no specificity as to how the actual malice requirement is met, is facially insufficient.

¶33        Moreover, even if Plaintiffs' allegations could be considered sufficient to satisfy *Dombey* and *Sullivan*—which they are not—Plaintiffs' claims as to Defendants were nevertheless properly dismissed.   The allegedly defamatory statements—as appended to Defendants' motions to dismiss—generally regarded matters of public concern in the context of hotly contested Board elections, and/or were political speech and opinions incapable of being objectively characterized as true or false or otherwise not capable of a defamatory meaning, and were protected by the First Amendment.  Plaintiffs concede that their first claim against Sharon Maiden is not a defamatory statement, and Plaintiffs have waived and abandoned several of their claims of defamation against Samantha Kelley and Henry Kartagener by failing to either raise any issues or present cogent arguments in their opening brief regarding those claims. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977); *Polanco*, 214 Ariz. at 492, ¶ 6 n.2.  Further, although Plaintiffs claimed each allegedly defamatory statement injured all three of them, most of Defendants' statements clearly concerned only one or two, but not all three, Plaintiffs. *See Hansen v. Stoll*, 130 Ariz. 454, 458 (App. 1981) (stating that the burden is on the individual plaintiff to show a publication is "of and concerning" her).  Even assuming the superior court considered the appendices to Defendants' motions to dismiss, the superior court did not err in dismissing Plaintiffs' defamation claims.[10]

## VI.        The Kartageners' Cross-Appeal

¶34        As we have noted, following dismissal of the claims against them, the Kartageners moved for attorneys' fees, expenses, and sanctions under A.R.S. §§ 12-349 and 41-1491.36. *See supra* ¶ 9.  Plaintiffs failed to respond to the motion, but the superior court summarily denied it, finding "no good cause" for the motion when the court entered judgment for the

---

[10]        Relying on language from our previous memorandum decision in *Tarter v. Bendt*, 1 CA-CV 19-0703, 2021 WL 282265 (Ariz. App. Jan. 28, 2021), Plaintiffs argue that Sharon Maiden's post-election comment that "ex-board members secretly hatched up a scheme to seek retaliation on residents who did not support them during the election" may be actionable due to its use of the word "secret."  Plaintiffs note that, in *Tarter*, a panel of this court held that the statement "the HOA Board held a 'secret meeting'" was actionable. *Id.* at *3, ¶ 14.  Unlike the statement in *Tarter*, however, Maiden's statement makes no reference to a Board meeting and read carefully, makes clear the persons about whom Maiden was referring were "ex-board members." Accordingly, *Tarter* is distinguishable.

Kartageners. On cross-appeal, the Kartageners argue the superior court erred in denying their motion.

¶35 Although we generally review the denial of an award for attorneys' fees for an abuse of discretion, we review *de novo* the denial of a motion for sanctions and fees. *Hormel v. Maricopa Cnty.*, 224 Ariz. 454, 461, ¶ 27 (App. 2010) (citations omitted).

¶36 Under A.R.S. § 12-349, "the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party . . . if the attorney or party does any of the following: 1. Brings or defends a claim without substantial justification[;] 2. Brings or defends a claim solely or primarily for delay or harassment[; or] 3. Unreasonably expands or delays the proceeding. . . ." A claim lacks substantial justification when it "is groundless and is not made in good faith." A.R.S. § 12-349(F). Under § 12–349, the standard for these findings is preponderance of the evidence. *Fisher ex rel. Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 370, ¶ 13 (App. 1998) (citation omitted).

¶37 Under A.R.S. § 41-1491.36, "[t]he court shall not award attorney fees to a prevailing defendant unless the plaintiff's complaint was frivolous, unreasonable or without foundation."

¶38 Here, Plaintiffs' complaint was devoid of any factual basis for McCoy to bring any claim against the Kartageners, rendering her claims groundless and, on this record, strongly indicating a lack of good faith in bringing them. Plaintiffs appear to chalk this discrepancy up to a lack of precise pleading, and they argue the "fair import" of their pleading "would allow one to presume" they did not mean to include McCoy as a Plaintiff against the Kartageners. We disagree with their suggestion that they should be excused from any responsibility on this basis or that the Kartageners have waived this argument.

¶39 As to Johnson and Wilson, we disagree with the Kartageners that Plaintiffs' argument that they were not limited purpose public figures was "not rational," even in light of the fact that Johnson (and McCoy) had argued Board members *are* public figures in defending a previous lawsuit. Wilson was not involved in the previous lawsuit, and although Johnson's contrary position in this lawsuit might appear disingenuous, that previous lawsuit did not establish binding precedent. We also disagree that, on this record, Johnson's and Wilson's claims for defamation, false light invasion of privacy, and intentional infliction of emotional distress can be said to be

both groundless and not made in good faith merely because they were unsuccessful.

¶40        As for Plaintiffs' claim for a violation of the Arizona Fair Housing Act, no factual allegations regarding the Kartageners supported this claim.  Further, although Plaintiffs argue they voluntarily withdrew this claim, Plaintiffs did not agree to do so as to the Kartageners until Plaintiffs filed their response to the Kartageners' motion to dismiss in January 2021, approximately five months after they filed their complaint and after the Kartageners were forced to brief the issue in their motion to dismiss.  On this record, with no real basis in fact, the claim simply expanded the proceedings and was frivolous, unreasonable, and without foundation.  *See* A.R.S. § 41-1491.36.

¶41        As for Plaintiffs' claim of private nuisance, Plaintiffs provided no factual or legal basis for asserting this admittedly novel claim against the Kartageners.  Plaintiffs did not allege the Kartageners used their property to create a nuisance, and Plaintiffs failed to identify any property right the Kartageners denied Plaintiffs.  *See Graber v. City of Peoria*, 156 Ariz. 553, 555 (App. 1988) ("[A] nuisance is a condition which represents an unreasonable interference with another person's use and enjoyment of his property and causes damage.").  On this record, Plaintiffs' claim for private nuisance was groundless and not made in good faith.

¶42        Accordingly, we reverse the superior court's denial of the Kartageners' motion for attorneys' fees, expenses, and sanctions and remand for further consideration of that request in light of this decision.

## CONCLUSION

¶43        We affirm the superior court's Rule 54(b) judgments dismissing Plaintiffs' complaint as to Defendants, but we reverse the court's denial of the Kartageners' request for attorneys' fees, expenses, and sanctions and remand for further consideration of that request.  We award Defendants taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.